## SANITARY GROCERY CO., Inc., v. SNEAD.

### No. 6781.

United States Court of Appeals for the District of Columbia.

Decided March 29, 1937.

Rehearing Denied May 17, 1937.

---

[1] U.S.Code, T. 33, § 903(b), 33 U.S. C.A. 903(b).

[2] Howard v. Monahan. Dep. (D.C.) 33 F.(2d) 220.

Cornelius H. Doherty, of Washington, D. C., for appellant.

Alvin L. Newmyer and David G. Bress, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

## STEPHENS, Associate Justice.

This is an appeal from a judgment of the Supreme Court of the District of Columbia (now the District Court of the United States for the District of Columbia) entered April 6, 1936, upon a plaintiff's verdict in a personal injury suit. The assignment of errors presents two questions, one in respect of the admission of certain evidence, the other in respect of the refusal of a requested instruction.

The declaration alleged that the defendant (appellant) in violation of its duty to use due care to keep a Piggly-Wiggly store, operated by it in the District of Columbia, reasonably safe and free from obstructions, negligently permitted vegetable debris to accumulate on the floor whereby the plaintiff (appellee), a customer, slipped, fell and was injured. The defendant admitted that it was an operator of Piggly-Wiggly stores in the District of Columbia, but denied negligent injury of the plaintiff.

According to the testimony for the plaintiff, "as she was going around an aisle to go from the front of the store to the rear she slipped and both feet went from under her and she went down, . . ." She then said:

"it was both feet that slipped, and I fell ferociously hard and the young man picked me up, one of the clerks in the store picked me up, and I could not imagine why I fell like that; I always boasted that I was sure-footed myself, but I looked down and I saw the spinach and the grape on the floor and I made a comment about it and he began to brush it off my coat where I had fallen; I had a lightweight coat on, and he said that he was awfully sorry and—

\* \* \*

"Q What did he say? A He wanted to know if I was hurt; he said that he had been so busy, he noticed that had been there several hours, and he kicked it under the counter, kicked it under the left hand side, too, as it seemed to me it went, as I remember, and he picked up my bundles and he took my arm and went with me out of the store; . . ."

A witness for the plaintiff, who said "she saw Mrs. Snead fall and that when she fell she was going around the vegetable stand, fixing to go out, . . ." described the fall and the statements of the clerk as follows:

"A Well, all that I saw, I just saw her when she fell, and when she fell she fell right on her back and her feet went up.

"Q Did she fall hard or not? A Very hard.

"Q And how far away from her were you at the time she fell? A Well, I guess I was about six feet from her.

"Q And what happened when she fell, after she fell? A Well, after she fell, then one of the boys, the clerks, went and picked her up, and approached her, and helped to pick her up and said 'That has been on the floor for a couple of hours'—

\* \* \*

"Q You may continue. Tell us what you started to say. A And so he said that he was sorry and asked her did she get hurt, and said he was sorry that this had happened, and that this were there a couple of hours and that he have been so busy that he have not had a chance to clean it up today, so he brushed her up and gave her her packages, and carried her on out.

"Q What if anything did he do with what was then on the floor? A He taken his foot and kind of pushed it up under the bin.

"Q And did you see the stuff on the floor? A Yes; I walked around and saw it.

"Q Now, can you tell us, just tell the Court and the jury what it was. A Well, it seemed to be spinach, you know, and grapes; it was not in bunches, just a few little scatters; it seemed like kind of a smear where she had slid, you know, and fell.

"Q Did this boy talk rather loud when he made that statement? A Oh, yes, he talked loud; he talked as if he was really hurt to see her have such a fall; like he was awfully nervous over it."

To the reception in evidence of this testimony as to what the clerk said, the defendant made timely objection, and he later also moved to strike it out. The court admitted the testimony and denied the motion to strike, and exceptions for the defendant were duly entered. This is the predicate of the first question raised under the assignment of errors.

At the close of the defendant's case, the following instruction was requested and refused, and an exception to the refusal was entered for the defendant:

"The jury is instructed that the mere fact that the vegetable matter was on the floor does not give rise to a presumption that it was there by the negligence of the defendant, and it is incumbent upon the plaintiff to prove, by a preponderance of the evidence, that the vegetable matter was caused to be placed on the floor by one of the defendant's employees, or that it had been there for such a length of time that the defendant, by the exercise of reasonable care, should have known of its presence, and, unless these facts are proven, by a preponderance of the evidence, then your verdict must be for the defendant."

This is the predicate of the second question raised.

■ As to the admission of the testimony objected to: The ruling of the court was correct. What the clerk said in the circumstances described was provable, under a well-known exception to the hearsay rule, as a spontaneous declaration. The basis of the exception is well stated in 3 Wigmore, Evidence (2d Ed.1923) § 1747, p. 738:

"This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts."

Leading cases are Travellers' Insurance Co. v. Mosley, 8 Wall. 397, 408, 19 L.Ed. 437; United States v. King (C.C.) 34 F. 302, 314; Travelers' Ins. Co. v. Sheppard, 85 Ga. 751, 776, 777, 12 S.E. 18, 27. For this jurisdiction see Washington & Georgetown R. R. Co. v. McLane, 11 App.D.C. 220, 222, 223. We think it not useful to discuss the facts of the cases cited or of the many others available for citation. As stated by Wigmore, *op. cit. supra,* in § 1750, pp. 745–749:

"Since the application of the principle thus depends entirely on the circumstances of each case, it is therefore impossible to regard rulings upon this limitation as having in strictness the force of precedents. To argue from one case to another on this question of 'time to devise or contrive' is to trifle with principle and to cumber the records with unnecessary and unprofitable quibbles. There is a lamentable waste of time by Supreme Courts in here attempting either to create or to respect precedents. Instead of struggling weakly for the impossible, they should decisively insist that every case be treated upon its own circumstances. . . ."

The objection of the defendant is that what the clerk said was narrative in character, in that he said that the vegetables had been on the floor for several hours. This objection confuses the content of the utterance with its character, as being spontaneous in respect of the event or fact to which it relates. "What the law altogether distrusts is not after-speech but afterthought. . . . That they [the declarations] shall be or appear to be spontaneous is indispensable, and it is for this reason

alone that they are required to be speedy." Bleckley, C. J., in Travelers' Ins. Co. v. Sheppard, 85 Ga. 751, 775, 776, 12 S.E. 18, 26, 27. As illustrated in Jack v. Mutual R. F. Life Ass'n. (C.C.A.) 113 F. 49, where statements made by an insured after being poisoned and just before death were admitted:

"If one threw a bomb, which immediately exploded, and killed another, the declaration of the dying man as to who threw it would be a part of the res gestae. If the assailant, instead of throwing the bomb, had placed it concealed, and fixed to explode in an hour or in 10 hours, when it exploded, the involuntary exclamation of the fatally wounded man, naming the person who had placed the bomb near him, would be, we think, a part of the res gestae. So we do not think that these objections gain any weight from the length of time which elapsed between Lipscomb's act of handing the capsule to Stewart and his declarations." [113 F. 49, at page 54] In the instant case the occurrence or circumstance to which the statements of the clerk related was not merely the fall of the plaintiff, but also the presence of the vegetables on the floor. It seems apparent that the comments of the clerk as to the time during which they had been there were as spontaneous as any other portion of his remarks.

"in the Courts where this borrowed doctrine of strict contemporaneity still appears, the inclination is to stigmatize an excluded declaration as 'narrative;' this term being used as meaning an assertion of a past fact. This test for exclusion is of course unsound, because practically all the utterances offered under the present Exception are 'narrative,' in the sense of an assertion of a past fact. The statements, constantly admitted, of the circumstances of a homicidal quarrel or of a railroad collision, are commonly of facts occurring prior in time to the utterance; and wherever such are admitted, it must be in spite of their being 'narrative.' Moreover, a 'narrative' may in strictness be of events occurring at the moment of speaking (as, 'I am bleeding'), and its application to past events alone is a misuse of words. The term 'narrative' serves merely to mislead, and should be discarded." [Wigmore, *op. cit. supra,* § 1756, p. 758]

The cases cited by the defendant themselves recognize spontaneity as the test of admissibility. Metropolitan R. R. Co. v. Collins, 1 App.D.C. 383, excluded the particular statement therein sought to be introduced because it did not satisfy this criterion. The same was true in Kehan v. Washington R. & E. Co., 28 App.D.C. 108, and in Vicksburg & Meridian R..R. Co. v. O'Brien, 119 U.S. 99, 7 S.Ct. 118, 30 L. Ed. 299. In Grzboski v. Bernheimer-Leader Stores, 156 Md. 146, 143 A. 706, the facts are not stated with sufficient explicitness to make it possible to determine whether the excluded remark was a spontaneous declaration or not.

■ As to the refusal to give the requested instruction: The subject matter thereof was fully covered by other instructions which clearly told the jury that the plaintiff must establish her case by proof, thus negativing the operation of any presumption in her favor; and the charge of the court as given correctly stated the law. Under such circumstances the refusal was not error. District of Columbia v. Woodbury, 136 U.S. 450, 10 S.Ct. 990, 34 L.Ed. 472; Pinn v. Lawson, 63 App.D.C. 370, 72 F.(2d) 742.

The judgment of the trial court is Affirmed.