## DISTRICT OF COLUMBIA v. RICHARDS.
### No. 7830.

United States Court of Appeals for the District of Columbia.

Decided April 13, 1942.

Mr. Vernon E. West, Principal Assistant Corporation Counsel, D. C., with whom Mr. Richmond B. Keech, Corporation Counsel, D. C., and Mr. Chester H. Gray, Assistant Corporation Counsel, D. C., were on the brief, all of Washington, D. C., for appellant. Mr. Oliver Gasch, Assistant Corporation Counsel, D. C., of Washington, D. C., also entered an appearance for appellant.

Mr. William Wendell, with whom Mr. John A. Weil and Mr. Richard W. Oliver, were on the brief, all of Washington, D. C., for appellee.

Before STEPHENS, VINSON, and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The suit is for damages for personal injuries caused by a fall. The District of Columbia owns and operates the Eastern Market. The codefendant, Stone, was lessee of a stand where he conducted a seafood business. About three o'clock in the afternoon of Thursday, July 2, 1936, plaintiff went to the Market to buy fish. While he was walking in the aisle next to Stone's stand, according to his testimony, his left foot slipped on a piece of ice and his right foot slipped on the wet floor, so that he fell, breaking his arm and sustaining other injuries.

He claims that Stone and the District were negligent in causing the ice and water to be in the aisle, in failing to remove them or provide proper precaution against danger, as by the use of sawdust, and in other respects. The defendants denied negligence and asserted plaintiff was contributorily negligent. The verdict and judgment were for plaintiff against both defendants. Only the District has appealed. It now claims there was no evidence of negligence, and that the court erred in overruling its

motion for a directed verdict. We think the evidence was sufficient for the jury to consider and the judgment must be affirmed.

Plaintiff does not contend that the District is liable for Stone's negligence on respondeat superior. He claims each owed him an independent duty. Stone's liability is predicated on negligently causing the ice and water to be in the aisle and failing to remove it promptly, the District's on failing to correct the danger after having knowledge or constructive notice, whether or not Stone's act or business operations created it. The issues on appeal therefore come down to whether the evidence was sufficient to sustain the jury's findings that (1) a dangerous condition existed; (2) the District had knowledge or constructive notice of it and failed to remedy it; and (3) plaintiff was not contributorily negligent. The evidence was conflicting in all these respects.

Stone's stall was in the southeast corner of the Market, with C Street on the south, Seventh Street at the east. The stand faced westwardly to the aisle. A door led from it into C Street. Just inside the door in the aisle adjacent to Stone's display counter was a large drain, covered with a heavy iron grating, toward which the floor inclined slightly for several feet. Behind the counter another aisle ran between it and a container for ice and foods not on display.

Except for admitted facts, plaintiff's case rests largely on his own testimony and that of Schymansky, who worked for Stone. Plaintiff testified his left foot slipped on a piece of ice, his right on the wet floor, when the former was about a yard from the drain, the latter a foot; when he fell his body covered part of the drain; when he got up his clothing was wet on the right side; "there was water around there, all around"; there was ice in front of and beneath the counter, and "the man that worked behind the counter— for Stone—came around and taken the lid off the top of the cesspool. It was stopped up with some kind of sediment or something; he taken a broom and swept all underneath the edge of the counter and swept the water and ice down in the pool and then put the lid back on it." He added, "There was a lot of sediment" in the drain.

Plaintiff did not see the ice before he fell—"I didn't pay any attention to it. I started to go up to the stand to purchase fish." He first saw the ice and water when he got up. He gave his age as seventy-one and said, "My eyesight isn't so good," though he also stated the day was sunny and the light clear. He had seen ice on the floor on previous occasions.

Stone, he said, was cleaning fish, with his back to the counter, and said nothing to him. Plaintiff said nothing to Stone or anyone at the time, but went outside by the C Street door. He returned the next day and discussed the matter with the market master, and with Stone and Schymansky.

Schymansky worked for Stone regularly on Fridays, now and then at other times. He worked the day after the fall, but was unsure whether he was there the day it took place. He said that at times ice was brought in by the C Street door and dumped in a barrel near or partly over the drain, standing in the aisle. He would come out from time to time, sweep the ice and water in the aisle into the drain, and clean up its top. Water would "drop down from the case and some of it leaked in there." Sawdust was used around the drain, and the trap would become clogged up and had to be cleaned out. He said he "could have" swept up the ice and water after plaintiff's fall, though he probably did not. He worked from ten to four or five o'clock, and stated that ice was brought in over the trap by the iceman "sometime about ten in the morning, sometime at one or two in the afternoon." The barrel was not removed until evening. Friday's stock of fish, the largest, was brought in "mostly on Thursday afternoon." When there were too many fish for the container they would be put under the stand with ice; all the ice could not be used at once, but was scooped from the barrel over the counter for use. At the end of the day they would roll the barrel around and put the remaining ice in the case. He further testified that sawdust, when it was in the aisle, would clog up water and keep it from going down the drain; that water and ice would extend out from the barrel a foot or a foot and a half; and that the C Street door was kept open "all the time during the summertime."

Defendants' witnesses contradicted much of this evidence. But, if believed, it was clearly sufficient to sustain findings that ice and water were in the aisle, and came there through Stone's operations; that he negligently allowed them to remain without prompt and proper attention; and that they caused plaintiff's fall and injuries. The jury could find also that the drain was clogged, causing water

to back up and, in connection with other evidence, that the District failed to clean it properly or at all on the day of the injury. It cannot be said as a matter of law that an aged man, with sight "not so good" and 'attention concentrated on the wares displayed for his purchase was contributorily negligent in failing to see the small pieces of cracked ice and the wet spot immediately in front of the counter.

■ The District insists it was not negligent, first, in that it had no knowledge or constructive notice that ice and water were in the aisle; second, because its evidence established without contradiction that the aisles were swept between two and three o'clock.

Several District witnesses, including operators of other stalls, testified they had never seen ice or water before Stone's stand. None except Stone said he was there or saw the aisle on the afternoon of the fall. The market master testified he and his assistant (or a substitute when one of them was on leave) swept the aisles daily, beginning at the ends, between two and three, and his time sheet showed he left at three o'clock that day. Hence, it is concluded the aisle before Stone's stand must have been cleaned very shortly before plaintiff fell. Further, the temperature at three that day was shown to be 85°, so it is urged that small pieces of ice like these could have remained unmelted for a time too short for the District to have constructive notice of its presence. This evidence, it is said, shows conclusively both that it had no notice and that it discharged fully its duty to keep the aisles clean.

These conclusions, however, do not take account of the clogged condition of the drain and the accumulation of water in the aisle or the wet place where the ice was lying. If it is assumed that the District was not negligent concerning the particular piece of ice on which plaintiff slipped, that was only one of the factors of danger which brought about his fall and injury. The ice contributed to his fall, but so did the wet floor on which the other foot slipped. If plaintiff's testimony is accepted, supported as it is in this respect by Schymansky's, the jury was justified in finding that the drain was clogged and had not been cleaned that day or for some time previously. It could find that the floor was wet and water had backed up, either from accumulations which the cleaners failed to reach on the particular day or from others created by delivery or scooping of ice over the counter after the cleaners had swept that end of the aisle. Furthermore, except for the testimony of Stone, the remaining witnesses for the District, including the market master, testified to general practices and conditions and to absence of ice and water on the floor generally. But none, with the single exception, testified as to the specific occasion in question. In other words, the District's effort to prove the dangerous condition did not exist and could not have been discovered consisted largely in evidence of general practices in caring for the aisles which, while strong, was not so conclusive as to require the jury to disbelieve plaintiff's evidence that they were not observed on this occasion. All general rules have exceptions except, it is said, the second law of thermodynamics. Likewise, all general practices may have their departures, and it cannot be held that the jury was required to accept the inferences indicated by the District's proof of general practice as against plaintiff's contrary and direct evidence of specific departure.

■ There was sharp conflict in important respects. Stone and the market master denied that Stone procured his ice through the C Street door, used a barrel, or placed one in the aisle, and Stone denied that he or anyone came out and cleaned the drain or swept the ice and water into it after plaintiff fell. Stone even questioned whether plaintiff fell at all and denied his statements in almost every material respect. But Stone's testimony and the market master's were contradicted in important respects by Schymansky, who was either disinterested or not interested in plaintiff's behalf. In general, his testimony corroborated the plaintiff's, more largely by inference than by direct assertion concerning the facts at the time of the fall. These and other conflicts were for the jury to resolve.

■ It would serve no useful purpose to review the evidence further. It may be added that the District's liability is based on the law relating to its proprietary obligation as the owner and operator of a building used for business purposes, to one invited there as a customer, not on the general duty to maintain the streets and other public places in safe condition. We need not determine whether there is a difference or, if so, what it may be.

The judgment is

Affirmed.