**DOCTORS HOSPITAL, Inc., v. BADGLEY.**

No. 9126.

United States Court of Appeals. District of Columbia.

Argued April 3, 1946.

Decided June 28, 1946.

WILBUR K. MILLER, Associate Justice, dissenting.

Mr. John H. Burnett, of Washington, D. C., with whom Mr. Charles W. Arth, of Washington, D. C., was on the brief, for appellant.

Mr. Charles H. Quimby, of Washington, D. C., with whom Mr. Elmer E. Cummins, of Washington, D. C., was on the brief, for appellee.

Before EDGERTON, CLARK, and WILBUR K. MILLER, Associate Justices.

EDGERTON, Associate Justice.

This appeal is from a judgment for appellee, the plaintiff, in an action for personal injuries. The question, which we discuss only because the court is not unanimous, is whether the evidence supports the jury's verdict.

Appellee called at appellant's hospital, in the central part of Washington, to visit a patient, and was injured by slipping and falling on the polished floor of the lobby, a few feet inside the main entrance. Although there was evidence to the contrary, the jury were entitled to believe appellee's evidence that the floor was visibly and palpably wet at 2:45 p. m. when the accident occurred.

The floor had not been freshly mopped. Outside, rain had fallen almost continuously since 8 a. m. Though the total

precipitation was not great, there is nothing to show that there were not occasional intervals of substantial rainfall. A witness for appellee testified that the floor was wet "just like anything would be after a lot of people had passed over it with wet shoes and the drippings from umbrellas". In the absence of any other explanation, the jury were entitled to infer that it had become wet by that process. Probable causes may be inferred from apparent effects, despite the possibility of error that inheres in all human observation and all human inferences. What looks like a man's signature may be found to have been written by him, though no one saw him write it and though it may actually be, as he claims, a forgery. Nothing is ever certain, and in civil actions nothing has to be proved beyond a reasonable doubt.

Undisputed testimony showed that very few people, not "a lot", entered the building and passed over the floor of the lobby during the quarter of an hour which elapsed between the beginning of the visiting period and the time of the accident. There is no evidence or contention that traffic had been heavier earlier in the day. It follows that the deposit of water by the shoes and umbrellas of "a lot of people" was a gradual process which took a considerable amount of time. The jury might fairly think that due care required appellant, during this time, to discover that this gradual wetting process was going on, or to realize that it must be going on, and to make some effort to obviate it. Appellant made no such effort during the six hours which elapsed between 8:30 a. m., when the floor was gone over with a dry mop, and the time of the accident. Accordingly reasonable men might conclude, as the jury did, that the floor was wet by reason of negligence on appellant's part. Whether this court would or would not have reached the same conclusion is of course immaterial.

The evidence also supports the conclusion that the wet floor was one of the causes of appellee's fall. Obviously falls are more likely on wet floors than on dry ones. Since standing water is more effective than damp shoes in reducing friction or traction between floors and shoes, it is more likely to cause falls. Even if the previous dampness of appellee's shoes was one cause of her fall, appellant was responsible for the fall if appellant's negligence was another cause of it. The evidence justified the inference, as a matter of reasonable probability, that the wet floor was at least a contributing cause of the fall. The alternative inference that appellee's damp shoes were the sole cause of her fall might reasonably be thought quite improbable. The evidence therefore supports the jury's verdict.

Affirmed.

WILBUR K. MILLER, Associate Justice (dissenting).

In the law of negligence, certain legal truths are fundamental and so universally recognized that they may be held to be self-evident. Among these is that negligence is not presumed. The burden of proving a defendant's negligence is upon the plaintiff and the mere happening of an accident does not cast upon the defendant the burden of proving that it did not occur through his negligence.

Another of these truths is that the owner is not an insurer against accidents to the persons who enter his building at his invitation. When a plaintiff seeks to make a defendant liable because of an accident sustained in the latter's building, the plaintiff must prove that the accident was caused by the negligence of the defendant or his employees, or that it resulted from a condition of which the defendant had either actual or constructive notice; otherwise there can be no recovery. That a defendant had constructive notice of a dangerous condition in his public building which brought about a plaintiff's injury can be shown by the plaintiff only by proving that the condition existed for such a length of time that the law will presume the defendant to have had knowledge of it, that is, that the defendant would have known of it, had he exercised reasonable care.

In a suit for personal injuries sustained through a fall on the wet floor of a public building, a plaintiff cannot make out his case merely by showing that the floor was wet. The burden rests upon him to estab-

lish that the floor became wet and therefore dangerous under circumstances which would charge the defendant with responsibility therefor. These are principles of the law of this jurisdiction.[1] With these legal truths in mind, I have examined the evidence in the present case with considerable care. That a verdict for the defendant[2] should have been directed, I have no doubt. In the following discussion of the evidence I shall attempt to point out the reasons which force me into a dissent, which is reluctant because of my respect for the views of my colleagues.

Certainly Mrs. Badgley proved that she slipped and fell in the lobby of Doctors Hospital. Just as certainly, that proof alone did not make the hospital liable to her. The plaintiff and her aunt, although repeatedly and emphatically saying that there was no sheet or pool or puddle of water on the floor, testified that it was "just wet"; so that, in spite of the insistence of five witnesses who examined the floor immediately after the accident and said it was not wet, the jury probably was warranted in concluding that there was enough moisture on the floor to cause Mrs. Badgley to slip and fall. But that was not enough to convict the hospital of negligence, and to require it to respond in damages.

When she had introduced evidence from which the jury might properly decide that a wet floor caused her fall and injury, the plaintiff had not made out a case. At that point, only an accident insurance company would have been liable to her. It was necessary that she go further with her evidence. It was essential for her also to prove that the defendant had actual or constructive notice of the wet condition of the floor; and that such notice had reached the defendant so long before the accident that a failure to remedy the condition was a failure to exercise reasonable care.

There was no pretense at proof of actual notice to the hospital. The case turns solely, therefore, on the question of constructive notice.

To build up constructive notice, the first

[1] In F. W. Woolworth Co. v. Williams, 59 App.D.C. 347, 41 F.2d 970, 971, a case presenting a factual situation not unlike that present here, this court took occasion to state clearly what a plaintiff so situated must prove in order to recover for his injury. In the course of the opinion the court said:

"The burden of proving defendant's negligence is upon the plaintiff. The mere happening of the accident does not shift to the defendant the burden of establishing that the accident did not occur through its negligence, nor does it create a presumption of negligence. On the contrary, the legal presumption is that reasonable care was exercised by the defendant. In the case of Schnatterer v. Bamberger et al., 81 N.J.L. 558, 79 A. 324, 325, 34 L. R.A.,N.S., 1077, Ann.Cas.1912D, 139, the plaintiff sued for injuries sustained from a fall in defendant's store. The fall was caused by her tripping on a loosened brass edging or nosing originally fastened by screws to the upper edge of the step for the protection thereof. The court, affirming the judgment in nonsuit, among other things, said: 'When the plaintiff rested her case, it had not appeared that the defendant company had been guilty of any want of reasonable care in the keeping of its store safe for her use, for the reason that she had failed to show that the defective condition of the brass edging which

she said existed on the night of the accident of April 24th had either (a) been in fact brought to the previous notice of the defendant, or, failing in proof of such actual notice, that (b) the defect had existed for such space of time before that occurrence as would have afforded the company sufficient opportunity to make proper inspection of its stairways to ascertain their condition as to safety, and to repair their defects. In the absence of proof of either, the legal presumption is that defendant had used reasonable care.'

"The defendant is not an insurer against accident to persons entering its store for the purpose of making purchases or otherwise. Until it is established that the accident was occasioned through the negligence of defendant's employees, or as the result of the existence of a condition of which defendant had either actual or constructive notice, there can be no recovery."

Further in the same opinion the court added:

"Plaintiff cannot sustain her case by merely showing that a spot was there. The burden rests upon her to establish its presence under circumstances which would charge defendant with responsibility therefor. This she failed to do, but rested her case solely on the existence of the spot on the floor."

[2] The parties will be referred to as they were designated in the lower court.

essential was for the plaintiff to prove that, before the accident, the floor was perceptibly wet so as to be potentially dangerous; and the second essential was to prove that it had been so for such a length of time that the exercise of reasonable care would have enabled the defendant to discover the condition.

There was no direct evidence from any witness that the floor was wet at any time before the accident. Mrs. Badgley and her aunt were the only witnesses who testified that the floor was wet, and they spoke only as of 2:45 p. m., the time of the accident. Consequently, to build up constructive notice, and to establish the first essential, i. e., that the floor was wet before the accident, indirect and circumstantial evidence had to be used. In this respect the plaintiff was content to rely on proof that rain had fallen continuously from 8:00 a. m. (when the floor was cleaned with a dry mop, as was done each morning at that time) until 2:45 p. m., when she slipped and fell. From this fact she reasons that water dripping from the umbrellas, shoes and clothing of persons who entered the lobby after 8:00 o'clock had made the floor potentially dangerous so long before her entrance that the defendant should have done something to remedy it. The jury and the majority of the court reasoned in the same manner.

Obviously, whether such reasoning is rational depends on several factors: (a) the intensity of the rainfall, (b) the number of persons who had come into the lobby from the outside after 8:00 o'clock, and before the plaintiff came in, and (c) the approximate time or times of their entrance.

I examine first the matter of rainfall. The court's opinion says, "Outside, rain had fallen almost continuously since 8 a. m." That sounds like a downpour which, long before the accident happened at 2:45 p. m., would have soaked into a dripping condition the clothing of any persons who entered the lobby after 8:00 a. m.; and, without further explanation, the jury might have been justified in indulging in such an inference. But the court has omitted important details as to the rain. Undisputed evidence, in the form of official weather records, introduced by the plaintiff, shows that from 8:00 a. m. until 3:00 p. m. the almost continuous precipitation amounted in the aggregate to only 15/100ths of an inch. This was an average of 3/140ths of an inch per hour and was no more than a slight drizzle. Two sets of doors and a mat-covered vestibule floor separated the lobby from the sidewalk. This evidence was not sufficient, in my opinion, to persuade a reasonable mind that the rain from 8:00 a. m. to the time of Mrs. Badgley's accident was heavy enough to dampen the clothing and umbrellas of those who had entered the lobby before she did to the extent that water had dripped from them to the lobby floor in a perceptible quantity long enough before her fall to charge the hospital with notice of its presence.

As irrational as such a conclusion seems to me to be, let us suppose, for the sake of the discussion, that the jury was warranted in thinking that a misty rain such as that disclosed by the proof caused the floor to become wet from the drippings of clothing and umbrellas. That was only the first essential thing to be proved by the plaintiff in building up constructive notice. The second essential, and an indispensable part of the plaintiff's proof, was for it to be shown that water had been deposited on the floor long enough before the accident that the defendant would have known of its presence, had it used reasonable care. This depends, of course, on what the proof shows as to whether a substantial number of people had entered the lobby before 2:45 p. m. and as to the time when they entered. The failure of proof as to this second essential is, in my view, even more glaring than as to the first.

It should be remembered that the visiting period from 2:30 p. m. to 4:00 p. m. had been in progress only 15 minutes when Mrs. Badgley and her aunt came into the hospital. There was no contradiction of the statement of the witness who said,

" * * * visiting hours had started at 2:30 and it was a very bad day and people had not started to come in."

This statement probably was not intended to convey the impression that no visitor had come into the lobby between the beginning

of the visiting period at 2:30 and the time of Mrs. Badgley's entry at 2:45; but certainly it was intended to mean, and does mean, that relatively few people had come through the doors after the entrance of visitors was first permitted just 15 minutes before.

I cannot escape the conclusion that the few people who came into the lobby in the quarter hour before the plaintiff entered, and who had come in from a rain so slight that it was not more than a mist or drizzle, could not have deposited from their clothing and umbrellas enough water on the lobby floor to make its presence apparent to an observer; and even if they did, that a period of 15 minutes was not long enough to give constructive notice to the hospital that the floor was dangerously wet. Probably it will not be supposed by anybody that there can be constructive notice here if the floor was made wet only by visitors who entered the lobby after 2:30 p. m. It follows that, in order to make out her case, it was incumbent on the plaintiff to prove that a substantial number of people had come in from the street after 8:00 o'clock and before 2:30.

In that respect, the plaintiff failed completely in her proof. No witness stated that any person came in through the doors used by Mrs. Badgley and her aunt prior to the beginning of the visiting period at 2:30. The jury had no way of knowing that anyone was permitted to, or did, use the entrance in question before 2:30 on that day. If any persons entered, who were they, and what were their reasons for coming? Probably they were not visitors of patients, for visitors were not invited. Not many of them were physicians, nurses, hospital attaches or tradesmen, for it is a matter of common knowledge that those persons seldom, if ever, use the public entrance of a hospital. The record is silent as to the identity of the postulated people who are thought to have deposited water on the floor before 2:30 or that they were considerable in number. That any did so is a speculation unsupported by any evidence. It may be said to be also common knowledge that, before regular visiting hours, persons frequently enter the lobbies of hospitals seeking information, or because they are unwilling to await the stipulated visiting period to call on patients, or that sometimes doctors and nurses use the public entrance. But even so, it must be admitted that such traffic could not compare in volume with that during the hours when visitors are invited.

The court's opinion observes that

"Undisputed testimony showed that very few people, not 'a lot', entered the building and passed over the floor of the lobby during the quarter of an hour which elapsed between the beginning of the visiting period and the time of the accident."
Then, after stating there was no evidence or contention that traffic had been heavier earlier in the day, the court added

"It follows that the deposit of water by the shoes and umbrellas of 'a lot of people' was a gradual process which took a considerable amount of time."
But the court admits that "a lot of people" did not come in during the 15 minutes of the visiting period. If it would take "a considerable amount of time" for "a lot of people" to deposit the water, surely the "very few people" said by the court to have come in after visiting was allowed, augmented by the still fewer, if any, who came in before 2:30, could not reasonably be said to have brought in from a misty rain enough water to put the hospital on notice.

In sum, my view is that the court's decision has the effect of fastening liability on the hospital merely because the plaintiff slipped on a damp lobby floor. The plaintiff has been allowed to recover without having proved negligence. The Doctors Hospital has been placed in the role of an accident insurance company.