**Mrs. Carrell MAXWELL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 1481–65.**

United States District Court
District of Columbia.

Jan. 29, 1968.

Douglas A. Clark, Vienna, Va., for plaintiff.

Arnold T. Aikens, Asst. U. S. Atty., Washington, D. C., for United States.

## MEMORANDUM

GESELL, District Judge.

This is a suit under the Federal Tort Claims Act (Title 28, § 1346(b), 2671–2680 U.S.C.) claiming damages arising out of an injury to plaintiff under the following circumstances:

Plaintiff, age 65 at the time of the injury, came to the Smithsonian Institute Museum of History and Technology on the morning of February 10, 1965, at approximately 10:15. She was seeking an opinion on two miniature paintings from Dr. Beggs of the Smithsonian, with whom she had an appointment at 10:30, and entered this particular building of the Smithsonian in an effort to locate where Dr. Beggs' office was.

Plaintiff lives in Manassas, Virginia, and travelled by car from Manassas with her friend Mrs. Sinclair. It was raining when she left Manassas and there was a misty rain, or light drizzle, at the time she arrived at the Smithsonian, sufficient for some people to carry umbrellas, but Mrs. Maxwell had none. She was driven up to the Mall entrance and entered, proceeding to cross the foyer. Immediately inside the first door she entered there were corrugated hard rubber mats approximately seven feet wide which she crossed without wiping her feet.

There was marble floor in the foyer beyond the mats. It was necessary for plaintiff to proceed across the marble to continue entry into the building proper. Immediately on stepping upon the marble floor at the far side of the mats, Mrs. Maxwell slipped and fell backwards. Both feet went out from under her and she landed partially on the marble and partially on the mats, with the principal impact on her left hip, cracking her pelvis in two places.

There were no witnesses to the actual fall. However, all possible and responsible care was given plaintiff immediately thereafter by the guards and first aid employees of the Smithsonian.

The doors through which Mrs. Maxwell entered had been opened at 9:00 o'clock that morning. The visitors in the early morning were few, but some members of the public in unknown number and a few employees had crossed ahead of her. There were no puddles or accumulations of water on the floor, but the floor was moist where she walked caused by water tracked in by others who had entered. As plaintiff describes it, the floor "looked sweaty". Others who had occasion to observe the floor said that it was a "little damp" or sufficiently wet "to make tracks". Mrs. Sinclair stated that the floor "seemed slick". Plaintiff's shoes were wet, clearly caused by her walking in the rain without an umbrella before entering the building. Plaintiff was wearing shoes with leather soles and moderate heels.

The foyer was well lighted by light through a number of glass doors as well as center lighting and there were no distracting exhibits. The United States, in answers to interrogatories in evidence and as a result of an investigation, stated that "the floor was partially wet from rain tracked in by visitors" and that the rubber mats were laid on the floor as a precaution taken to prevent persons entering from slipping on the wet floor. Insofar as appears, the mats are a permanent installation. It was the practice of the Smithsonian to have the floor mopped by its custodial employees whenever the guard noted that water was standing on the floor, but the floor had not been mopped by 10:15 on this morning, there being no water standing on the floor.

No proof was offered that others had slipped on the floor on this or similar occasions, that the floor was in fact slippery, or that the Smithsonian had any actual notice that unusual conditions developed when the marble floor became damp.

Plaintiff, a Southern gentlewoman, was seriously hurt, being required to spend some weeks in the hospital and initially suffering serious pain requiring narcotic medication and later other medication to relieve pain. She was in some pain for a considerable period of time and her recuperation required several weeks after leaving the hospital when she first used a walker and then a cane. The details of plaintiff's injury, however, are not material in view of the determination made on the foregoing facts as set forth below.

█ The United States was under a duty to maintain the building and the floor in a reasonably safe condition. F. W. Woolworth Co. v. Williams, 59 App. D.C. 347, 41 F.2d 970 (1930); Rule v. Bennett, D.C.App., 219 A.2d 491 (1966). This duty of reasonable care was owed to the plaintiff whether she be regarded as an invitee or licensee by invitation. McNamara v. United States, D.C., 199 F.Supp. 879 (1961). The questions of law presented are: did a hazardous or unsafe condition exist for such a period of time prior to plaintiff's fall as to constitute constructive notice to the defendant of that condition and give rise to a duty to correct it; was plaintiff's fall proximately caused by the condition which defendant was under a duty to correct?

█ The mere fact that the floor was damp and that plaintiff slipped and fell is not sufficient to permit her to recover and yet this is all the evidence shows. Ruffin v. Trans-Lux Theatre, D.C.Mun. App., 156 A.2d 678 (1959).

█ The United States was not on constructive notice of a condition not of its own making. The proof as to the amount of moisture on the floor, the length of time such condition existed, and the apparently permanent installation of the mats does not warrant the conclusion that the United States knew, as a matter of law, that the floor was not in a reasonably safe condition. Doctors Hospital v. Badgley, 81 U.S.App.D.C. 171, 156 F.2d 569 (1946). Therefore, the United States was not under a duty to the plaintiff, at the time of her fall, to mop the floor dry. Since there was no duty there was no negligence.

Plaintiff contends that by placing the rubber mats across the first seven feet of the entrance inside the doors of the foyer the United States acknowledged the necessity of some protection for the public and that the failure to extend the mats across the entire foyer was negligence and a lack of reasonable care. There is no proof on which the Court can find that the United States was under any duty at any time to place any mats in the foyer and the fact that it may have taken a precaution beyond that which the law may require of it is not to be turned against the United States and made the basis for recovery in this instance.

Under the decisions in this jurisdiction, a jurisdiction where marble and marble-like floors are common in many Government structures, plaintiff has failed to meet its burden and judgment shall be entered for the United States.

This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law. Defendant may present an appropriate order.