Lottie R. SEGANISH and Daniel
Seganish, Appellants,

v.

DISTRICT OF COLUMBIA SAFEWAY
STORES, INC., Appellee.

No. 20733.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 17, 1967.

Decided Sept. 24, 1968.

Mr. Samuel Intrater, Washington, D. C., with whom Mr. Albert Brick, Washington, D. C., was on the brief, for appellants.

Mr. John P. Arness, Washington, D. C., with whom Mr. Stephen S. Boynton, Washington, D. C., was on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and McGOWAN and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This is another in the continuing procession through this court of cases originating in falls occasioned by slippery substances on the floors of grocery stores.[1] Our appellants, Mr. and Mrs. Seganish, entered appellee's supermarket, separated to facilitate their shopping, and while Mr. Seganish focused his attention on the meat counter, Mrs. Seganish made her way to the vegetable display. As she walked along the aisle beside the green vegetable counter, she suddenly slipped, fell to the floor and sustained injuries.

Appellants then sued for damages on the theory that appellee negligently failed to maintain the aisle in a safe condition. At the conclusion of the presentation of appellants' case in chief, the trial judge directed a verdict for appellee. This appeal thus enjoins our determination as to whether appellants' proofs were sufficient to warrant submission of the case to the jury, and to the evidence we now turn, considering it in the light most favorable to appellants.[2]

1. See Fuller v. Giant Food, 114 U.S.App. D.C. 53, 310 F.2d 858 (1962); Kelly v. Great Atlantic & Pacific Tea Co., 109 U.S.App.D.C. 181, 284 F.2d 610 (1960); Foy v. Friedman, 108 U.S.App.D.C. 176, 280 F.2d 724 (1960); Gross v. Alabama Foods, 107 U.S.App.D.C. 151, 275 F.2d 180 (1960); Safeway Stores v. Preston, 106 U.S.App.D.C. 114, 269 F.2d 781 (1959); Brodsky v. Safeway Stores, 80 U.S.App.D.C. 301, 152 F.2d 677 (1945); Sanitary Grocery Co. v. Snead, 67 App. D.C. 129, 90 F.2d 374 (1937); O'Dwyer v. Northern Market Co., 24 App.D.C. 81 (1904); Washington Market Co. v. Clagett, 19 App.D.C. 12 (1901). See also District of Columbia v. Richards, 75 U.S. App.D.C. 349, 128 F.2d 297 (1942).

2. See Fuller v. Giant Food, *supra* note 1, 114 U.S.App.D.C. at 54, 310 F.2d at 859; Safeway Stores v. Preston, *supra* note 1, 106 U.S.App.D.C. at 114–115, 269 F.2d at 781–82; Peigh v. Baltimore & O. R. Co., 92 U.S.App.D.C. 198, 199, 204 F.2d 391, 392, 44 A.L.R.2d 671 (1953); Higashi v. Shifflett, 90 U.S.App.D.C. 302, 195 F.2d 784 (1952).

Three witnesses[3] viewed a crushed string bean terminating a short skid mark[4] at the spot where Mrs. Seganish slipped and fell, and both appellants saw considerable vegetable debris on the floor nearby. "[T]here was kale on the floor," said Mrs. Seganish, and "at least ten to fifteen other pieces of bean by the counter and a piece of lettuce and others."[5] Appellants also saw that the floor was wet at the point of the fall. Mr. Seganish testified elaborately about a puddle of water[6] "right in there where she fell."[7]

The manager of the store, called by appellants as a witness, explained that each morning an employee sprinkled water on the vegetables there in order to maintain their freshness. This involved the use of a sprinkling can, and the process sometimes resulted in spillage. The manager admitted that "on any number of occasions" there was water on the floor by the counter[8]—"[v]ery little," he avowed[9]—and that it was eliminated by mopping "if it is necessary." This witness could not recall whether any inspection was made of the area on the

date of the accident prior to Mrs. Seganish's fall.

Just how the vegetable matter and the water observed by appellants got on the floor, and whether appellee had knowledge of them, were not made the subjects of direct proof.[10] That, however, represented no departure from the line of "slip and fall" cases we have reviewed, for the claimants therein quite uniformly —obviously from sheer necessity—have relied upon circumstantial demonstrations. As in our past cases, which have reached divergent results because no two were ever just alike on their facts, the questions which are decisive here boil down not so much to matters of law as to inquiries into the capabilities of particular items of evidence. And the basic principles governing both the substantive and the evidentiary aspects of this appeal are but orthodox applications of well settled legal propositions.

A grocer is not an insurer of the condition of his store.[11] His duty is to exercise reasonable care to keep his place of business safe for the customer using it.[12] He is responsible, of course,

---

3. They were Mr. Seganish, Mrs. Seganish and another customer who assisted Mrs. Seganish to her feet.

4. Mrs. Seganish said the skid mark was "about an inch or so" long. Reference was made during Mr. Seganish's examination to a "four-inch skid mark."

5. Similarly, Mr. Seganish stated that he "observed some loose vegetables lying on the floor, scattered around that particular area and a little higher where my wife fell."

6. Mrs. Seganish also testified that "the floor was wet there" and that the wetness "was a small spot there where the bean was."

7. The size of the puddle appears in the record only through descriptions furnished by counsel. These make the puddle as small as 18 inches and as large as 50 inches in circumference.

8. Compare Foy v. Friedman, *supra* note 1, 108 U.S.App.D.C. at 177, 280 F.2d at 725.

9. As our decisions have taught, a relatively tiny quantity of a slippery substance in the traveled area of a floor can precipitate a fall. See Fuller v. Giant Food (grape or plum); Kelly v. Great Atlantic & Pacific Tea Co. (contents of jar of baby food); Foy v. Friedman (collard leaf); Safeway Stores v. Preston (green onion top); Brodsky v. Safeway Stores (vegetable matter); Sanitary Grocery Co. v. Snead (vegetable matter); O'Dwyer v. Northern Market Co. (vegetable matter), all *supra* note 1.

10. Compare Fuller v. Giant Food, *supra* note 1, 114 U.S.App.D.C. at 53, 310 F. 2d at 858.

11. Foy v. Friedman, *supra* note 1, 108 U.S.App.D.C. at 178, 280 F.2d at 725; Safeway Stores v. Preston, *supra* note 1, 106 U.S.App.D.C. at 115, 269 F.2d at 782; Brodsky v. Safeway Stores, *supra* note 1. See also F. W. Woolworth Co. v. Williams, 59 App.D.C. 347, 41 F.2d 970 (1930).

12. Foy v. Friedman, *supra* note 1, 108 U.S.App.D.C. at 177–178, 280 F.2d at

for injuries resulting from risks created personally or by his employees.[13] Moreover, his obligation of due care extends to reasonable supervision and inspection of the premises to identify and protect against potential perils, however otherwise arising.[14] For this reason, liability may also spring from a negligent failure to safeguard against dangers born of the activities of his customers.[15] But negligence can be found in relation to a customer-created hazard only if it is known, or because of its duration it should have been discovered, in time to afford a fair opportunity to remove it.[16]

■ To win the verdict, it was incumbent upon appellants to carry the burden of proving the essentials of ac-

tionable negligence.[17] To gain the jury's consideration, appellants' evidence had to be of such caliber that reasonable people might conclude that appellee had fallen short on its responsibilities.[18] It was for the jury, of course, to sift the evidence, weigh the proofs on both sides, and resolve the issues of fact. The jury's function also extended to drawing any and all inferences logically deducible from the evidence presented, and appellants, as parties against whom the verdict was directed, are entitled on this appeal to the benefit of such inferences.[19]

■ Juries, on the other hand, cannot be permitted to speculate,[20] and in particular cases the line between legitimate deduction and conjecture may become thin indeed.[21] We hold, however,

---

725–726. See also Fuller v. Giant Food, *supra* note 1, 114 U.S.App.D.C. at 54, 310 F.2d at 859; Hecht Co. v. Jacobsen, 86 U.S.App.D.C. 81, 82–84, 180 F.2d 13, 14–15 (1950); F. W. Woolworth Co. v. Williams, *supra* note 11, 59 App.D.C. at 349, 41 F.2d at 972.

13. Fuller v. Giant Food, *supra* note 1, 114 U.S.App.D.C. at 54, 310 F.2d at 859; F. W. Woolworth Co. v. Williams, *supra* note 11, 59 App.D.C. at 348, 41 F.2d at 971.

14. Foy v. Friedman, *supra* note 1, 108 U.S.App.D.C. at 178, 280 F.2d at 726.

15. See the cases cited *infra* note 16.

16. Fuller v. Giant Food, *supra* note 1; Kelly v. Great Atlantic & Pacific Tea Co., *supra* note 1, 109 U.S.App.D.C. at 181, 284 F.2d at 610; Safeway Stores v. Preston, *supra* note 1, 106 U.S.App.D.C. at 115, 269 F.2d at 782; Brodsky v. Safeway Stores, *supra* note 1; F. W. Woolworth Co. v. Williams, *supra* note 11, 59 App.D.C. at 348, 41 F.2d at 971.

17. *E.g.*, Sanitary Grocery Co. v. Snead, *supra* note 1, 67 App.D.C. at 131, 132, 90 F.2d at 376, 377; F. W. Woolworth Co. v. Williams, *supra* note 11, 59 App. D.C. at 348, 41 F.2d at 971.

18. *E.g.*, Baltimore & O. R. Co. v. Postom, 85 U.S.App.D.C. 207, 208, 177 F.2d 53, 54 (1949); Doctors Hospital v. Badgley, 81 U.S.App.D.C. 171, 172, 156 F.2d 569, 570 (1946).

19. See cases cited *supra* note 2.

20. Compare Kelly v. Great Atlantic & Pacific Tea Co., *supra* note 1, 109 U.S.App. D.C. at 181, 284 F.2d at 610; Brodsky v. Safeway Stores, *supra* note 1; F. W. Woolworth Co. v. Williams, *supra* note 11, 59 App.D.C. at 348, 41 F.2d at 971.

21. Appellee refers us to the oft-repeated statement that facts lending equal support to each of two inconsistent inferences support neither inference by a preponderance, *e.g.* Pennsylvania R. Co. v. Chamberlin, 288 U.S. 333, 339, 53 S.Ct. 391, 77 L.Ed. 819 (1933); compare Lewis v. Washington Ry. & Elec. Co., 52 App. D.C. 243, 285 F. 977 (1923), but we deem that proposition to be inapposite here. "From the mere fact that the evidence permits two or more possible inferences, it does not necessarily follow that the evidence is not substantial and is not sufficient to sustain a jury's finding. To be substantial, the evidence need not point only in one direction." Baltimore & O. R. Co. v. Postom, *supra* note 18, 85 U.S.App.D.C. at 208–09, 177 F.2d at 54–55. And "[t]he law is not so exacting that it requires proof of negligence or causation by testimony so clear that it excludes every other speculative theory." Christie v. Callahan, 75 U.S. App.D.C. 133, 148, 124 F.2d 825, 840 (1941). See also Washington Hospital Center v. Butler, 127 U.S.App.D.C. 379, 385–387, 384 F.2d 331, 337–339 (1967). Many proven circumstances, in all types of litigation, permit more than one in-

that appellants' evidence met the test, and was sufficient to require the trial court to submit to the jury, under proper instructions, the question whether negligence on appellee's part had been shown.

There was, according to appellants, quite a bit of vegetable matter near the vegetable counter, and we think that the element of accumulation bore witness to possible carelessness. We do not have here the mere presence on the floor of a single piece of vegetable debris for an undetermined period which might indicate neither that the grocer caused it to be there nor that he knew or should have known that it was there.[22] Here the presence of a considerable quantity of vegetable matter easily permits the inference that the condition was created, if not by the proprietor or his employees, by a number of customers, and that it was so long in the making that reasonable oversight of the premises would have detected it and prompted its riddance prior to Mrs. Seganish's fall.[23]

Additionally, appellants' insistence upon the presence of the puddle of water in the same area,[24] when combined with the manager's testimony that the vegetables were sprinkled daily,[25] established the basis for a plausible inference that appellee's employee had spilled it there or that, in any event, owing to the size of the puddle, appellee should have discovered it in time to mop it away before Mrs. Seganish arrived on the scene. The manager's testimony that water was frequently seen on the floor in the vicinity of the vegetable counter logically suggested that appellee should have anticipated its recurrence there at the time of the injury. And the fact that the sole method of combating these periodic puddles was by mopping after their presence became known raised an issue as to whether this measure satisfied the standard of reasonable care under the circumstances.[26]

We do not imply, by this recital and analysis of the evidence, that there was testimonial harmony, or that on the issue of appellee's negligence the jury could not have found either way. But since the trial court directed the verdict against appellants, we must give them the benefit of the most that the evidence could establish [27] and disregard incon-

---

ference and, as we have found "slip and fall" cases constitute no exception. See Fuller v. Giant Food, Safeway Stores v. Preston, both *supra* note 1. "Probable causes may be inferred from apparent effects, despite the possibility of error that inheres in all human observation and all human inferences. What looks like a man's signature may be found to have been written by him, though no one saw him write it and though it may actually be, as he claims, a forgery. Nothing is ever certain, and in civil actions nothing has to be proved beyond a reasonable doubt." Doctors Hospital v. Badgley, *supra* note 18, 81 U.S.App.D.C. at 172, 156 F.2d at 570. In our view, the evidence, analyzed and discussed in the text, authorized inferences which, if drawn by the jury, would have entitled appellants to a recovery.

22. Compare Kelly v. Great Atlantic & Pacific Tea Co., Brodsky v. Safeway Stores, both *supra* note 1.

23. Compare Fuller v. Giant Food, Safeway Stores v. Preston, both *supra* note 1.

24. While the skid mark, see note 4, *supra*, and accompanying text, indicates the greater likelihood that the string bean rather than the water caused Mrs. Seganish's slip, the water—which was in just about the same spot—remained a good probability. Whether it was the one or the other, or both, was a matter for the jury.

25. The manager's testimony was that the sprinkling customarily took place each morning. Mrs. Seganish fell about noon.

26. Compare Solon Service, Inc. v. Cook, 96 U.S.App.D.C. 25, 26–27, 223 F.2d 317, 318–319 (1955).

27. See the cases cited *supra* note 2.

## 658

sistencies which would not as a matter of law have precluded a verdict in their favor. All that we decide on this appeal is that the evidence, so viewed, entitled appellants to the jury's decision as to the facts under the court's instructions as to the law. This means, of course, that the judgment appealed from must be reversed, and the case remanded for a new trial.

 So we conclude our review, but on a note of regret that the case must now be retried. We can see from the record that the trial judge studied appellee's motion for the directed verdict, gave careful attention to appellants' points in opposition, and ruled as he read our *Brodsky* decision [28] to require. But, as we have admonished, "if there is room for a difference of opinion, the wise course is for the trial judge to allow the case to go to the jury." [29] The judge is then free, should he later determine that the verdict must fall, to enter judgment notwithstanding the verdict, and our action on appeal could not necessitate another trial.

Perhaps there is more reason to observe this precaution where direction of a verdict is sought at the close of all of the evidence. Nonetheless, we have suggested that it should be taken where, as' here, the effort is made when the claimant first rests.[30] Appellants' counsel requested the trial court to follow that procedure, but this the court did not see fit to do. As this case well illustrates, matters would have been all to the better if it had.

Reversed and remanded for a new trial.

28. *Supra* note 1.

29. Peigh v. Baltimore & O. R. Co., *supra* note 2, 92 U.S.App.D.C. at 202, 204 F.2d at 396; Williams v. Greenblatt, 106 U.S. App.D.C. 335, 272 F.2d 564 (1959);

Shewmaker v. Capital Transit Co., 79 U.S.App.D.C. 102, 103, 143 F.2d 142, 143 (1944).

30. See Todd v. Jackson, 109 U.S.App.D.C. 7, 8, 283 F.2d 371, 372 (1960).