810 P.2d 627

**Walter DULLES, a single person, Plaintiff/Appellant,**

v.

**SAFEWAY STORES, INC., an Arizona corporation, Defendant/Appellee.**

**No. 2 CA–CV 90–0217.**

Court of Appeals of Arizona, Division 2, Department B.

April 23, 1991.

As Corrected May 8, 1991.

Jacoby & Meyers Law Office by Thomas D. Welch, Tucson, for plaintiff/appellant.

Douglas & Brown, P.A. by Warren R. Brown, Phoenix, for defendant/appellee.

## OPINION

JAMES C. CARRUTH, Judge.[*]

This is a slip-and-fall case in which the plaintiff, Walter Dulles, appeals from the trial court's directed verdict in favor of defendant Safeway Stores, Inc. For the reasons set forth below, we reverse.

## FACTS

We view the evidence most favorably to the plaintiff, as we must, *Rocky Mountain Fire & Casualty Co. v. Biddulph Oldsmobile*, 131 Ariz. 289, 292, 640 P.2d 851, 854 (1982). On a Sunday morning in February 1986, Dulles was a business invitee on the premises of a Safeway Store located at Broadway and Wilmot in Tucson, when he slipped and fell on water that had accumulated in an aisle of the produce section. At the time in question, the store was open for business between 8:00 a.m. and 10:00 p.m. on weekends. Dulles entered the store between 8:00 a.m. and 8:40 a.m., and few other customers were present. He was walking in the produce section looking for green onions, radishes, and fruit, when he slipped and fell in a puddle of water that he claims to have noticed was "splashing all

over" around him as he fell. When he regained consciousness following the fall, he noticed someone, presumably an employee, removing the water with a mop "all around me."

The area in question was located between wet and dry produce bins. The wet bins were equipped with a water pipe and hose connections every eight feet. The produce in the wet bins was sprayed daily in order to maintain freshness. Normally, this is the responsibility of the produce manager, but on this particular Sunday no produce person was on duty. Other employees, including the assistant manager, Katie Marchiondo, at times sprayed the vegetables, though all the employees who testified denied using the produce spray hose on the particular morning in question prior to plaintiff's fall.

Testimony on routine procedures indicates that the wet produce is watered at night, then covered with tarps which are removed each morning prior to the opening of the store. Marchiondo testified that she arrived at the store at 7:00 a.m. and "probably" removed the tarps that would have been left on the wet bins following the store's closure the night before and inspected the entire store prior to opening, noting no hazardous conditions on the floors. The testimony from the defendant's employees about the use and location of the spray hose on the morning in question was equivocal. The store manager, Patrick Frey, testified that it was his policy that the hose be kept in the back room during hours that the store was open. Deli clerk Maureen McGee testified that the hose was "not supposed to be hooked up" at the time of the accident, but "could have been." Marchiondo said that the hose is generally kept at the end of the wet produce aisle, underneath it, or in the back room of the store when not in use, but that she did not recall where it was located on the morning in question.

None of the witnesses had ever seen water on the produce department floor af-

[*] A Judge of the Pima County Superior Court authorized and assigned to sit as a Judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed July 25, 1990.

ter spraying of the vegetables and none was observed prior to the fall. Deli clerk Debbie Blacklidge may have been in the area shortly before the fall and saw no water. Marchiondo and the two deli clerks testified that they had all been in the produce area that morning prior to the incident and saw no puddles of water. Following plaintiff's fall, however, Marchiondo prepared an incident report later the same day in her capacity as employee-in-charge. In the report, she stated that "produce spray was near the accident and could have been spread at any time." At the trial, she testified that this statement was speculation.

The defendant's employees testified that the routine procedure is that the store's floor is swept each night after closing. Frey testified that he had not been made aware of any leaks or malfunctions in the water lines in the produce area and that there had been no request for repair or replacement respecting the hose in the produce rack or its water line prior to the incident in question.

At trial, the defendant's employees' testimony concerning the amount of water on the floor differed somewhat from plaintiff's description. Marchiondo claimed to have observed a puddle about 12 inches in diameter, McGee saw a "small amount" under plaintiff after he had pointed it out to her, and Blacklidge saw no puddles or water on the floor but did note that the plaintiff's shirt was wet. None of defendant's employees remembered mopping the floor after the incident.

## PROCEDURAL HISTORY

Dulles sued Safeway to recover for the personal injuries that he claimed resulted from the fall. The case proceeded to trial before the court and a jury on March 6, 7, and 8, 1990. At the close of plaintiff's case, defendant moved for a directed verdict, claiming that plaintiff had failed to provide an evidentiary basis sufficient to

support a finding of liability under any theory of negligence involving actual notice, constructive notice, or "mode-of-operation."[1] Following extensive oral argument, the trial court granted Safeway's motion, ruling from the bench. Several days later, the court issued a 12-page minute entry providing a comprehensive analysis of its review of the potential liability theories laid against the court's assessment of plaintiff's evidence and providing a more formal basis for the grant of the motion for directed verdict.

Dulles filed a motion for new trial in which he conceded that there was no evidence to support liability "as to actual notice," but argued that reasonable minds might differ concerning the sufficiency of the evidence respecting either a constructive notice or mode-of-operation theory and that the case thus should have been submitted to the jury. That motion was denied and Dulles appealed.

## DISCUSSION

A directed verdict is improperly granted if a reasonable person would be justified, from the evidence produced, in returning a verdict for the party opposing the motion. *Rocky Mountain, supra.* Likewise, conceding the truth of the opposing party's evidence, if reasonable minds might differ concerning appropriate conclusions to be reached, a directed verdict should not be sustained. *Chambers v. Western Atlantic CATV*, 130 Ariz. 605, 607, 638 P.2d 219, 221 (1981).

We do not believe that an analysis of either the notice theories, *Preuss v. Sambo's of Arizona, Inc.*, 130 Ariz. 288, 635 P.2d 1210 (1981), *Rhodes v. El Rancho Markets*, 4 Ariz.App. 183, 418 P.2d 613 (1966), or the mode-of-operation theory, *Chiara v. Fry's Food Stores of Arizona, Inc.*, 152 Ariz. 398, 733 P.2d 283 (1987), is required here. It is fairly possible to construe plaintiff's evidence as tending to show that the puddle of water in question

---

**1.** Throughout the trial and on appeal, appellant contended that the employees of Safeway negligently caused the water to be on the floor. He has consistently called this theory "mode of

operation." However, it is merely a negligence theory, which requires no notice. *See McGuire v. Valley National Bank of Phoenix*, 94 Ariz. 50, 53, 381 P.2d 588, 591 (1963).

was caused by the defendant's employees when they sprayed the produce, either the night before the accident or on the morning in question. If so, no notice is required in such circumstances since the defendant store proprietor would be responsible and liable for the negligent acts of its employees. *McGuire, supra; Walker v. Montgomery Ward & Co., Inc.,* 20 Ariz.App. 255, 258, 511 P.2d 699, 702 (1973). As this court has previously stated in the context of a slip-and-fall claim, a plaintiff may "avoid the onus of showing the defendant's knowledge [by presenting some evidence] to show that it was more likely that the defendant's employees, rather than a third person, created the condition." *Vreeland v. State Board of Regents,* 9 Ariz.App. 61, 62, 449 P.2d 78, 79 (1969).

As noted, the testimony was to the effect that the produce was sprayed every day, though not on the day in question. However, the incident report prepared by employee Marchiondo stated that the water was near the hose used to spray the produce and that it could have been hooked up and sprayed at any time on the morning of the accident. The credibility of the testimony that the produce was not sprayed on the morning of the accident was a jury question. A jury could infer from the facts that the produce was sprayed daily, that the water where plaintiff slipped was near the hose, and that the hose could have been hooked up, that the water located where plaintiff slipped and fell had been placed there by a store employee. *See Farm-Aero Service Inc. v. Henning Produce Inc.,* 23 Ariz.App. 239, 532 P.2d 181 (1975). *See also Seganish v. District of Columbia Safeway Stores, Inc.,* 406 F.2d 653 (D.C. Cir.1968), a case quite like this one.

We do not suggest by our recital and analysis of the evidence that we find testimonial harmony or suggest that on the issue of Safeway's negligence the jury might not have found either way. We merely conclude that the evidence which was produced entitled the plaintiff to have his case submitted to the jury.

The court of appeals ended its opinion in *Seganish* with the following observations:

So we conclude our review, but on a note of regret that the case must now be retried. We can see from the record that the trial judge studied appellee's motion for the directed verdict, gave careful attention to appellant's points in opposition, and ruled as he read our *Brodsky* [*v. Safeway Stores,* 80 U.S.App.D.C. 301, 152 F.2d 677 (1945)] decision to require. But, as we have admonished, "if there is room for a difference of opinion, the wise course is for the trial judge to allow the case to go to the jury." The judge is then free, should he later determine that the verdict must fall, to enter judgment notwithstanding the verdict, and our action on appeal could not necessitate another trial.

Perhaps there is more reason to observe this precaution where direction of a verdict is sought at the close of all of the evidence. Nonetheless, we have suggested that it should be taken where, as here, the effort is made when the claimant first rests. Appellant's counsel requested the trial court to follow that procedure, but this the court did not see fit to do. As this case well illustrates, matters would have been all to the better if it had.

406 F.2d at 658 (citations omitted). We think this wisdom is applicable here.

Because we conclude that the plaintiff had made a submissible case, we reverse and remand for a new trial.

FERNANDEZ, C.J., and HOWARD, J., concur.