## CAMPBELL v. DISTRICT OF COLUMBIA.

### HOPKINS v. SAME.
### Nos. 6295, 6296.

United States Court of Appeals for the District of Columbia.
Argued April 3, 1935.
Decided May 20, 1935.
Rehearing Denied June 24, 1935.

Paul B. Cromelin, Bolitha J. Laws, and Lowry N. Coe, all of Washington, D. C., for appellants.

E. Barrett Prettyman and Robert E. Lynch, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is an appeal from judgments for the defendant in two separate actions for damages brought against the District of Columbia. The cases were consolidated for trial in the Supreme Court of the District. Both grew out of a single accident occurring at a grade crossing in Takoma Park in the District where the tracks of the Baltimore & Ohio Railroad pass over a public highway known as Chestnut Street. About a quarter after 11 o'clock in the evening of October 26, 1929, Mrs. Ida Hopkins, her daughter, Miss Edith Hopkins, and Mrs. Johnson, a friend, were returning from a social visit in Takoma Park to the downtown section of Washington in a closed Ford automobile. Mrs. Johnson was driving and Mrs. Hopkins and her daughter were in the rear seat. As they were in the act of crossing the railroad tracks, the automobile was struck by an express train of the Baltimore & Ohio. The car was demolished, Mrs. Johnson and Mrs. Hopkins were killed, and Miss Hopkins so seriously injured that, as a result of the shock and injury, she has ever since been an invalid in St. Elizabeth's Hospital for the Insane.

Separate actions were begun against the District of Columbia and the railroad company for the recovery of damages on

account of the death of Mrs. Hopkins and the injury to Miss Hopkins.

Shortly before the trial a motion was made to consolidate the cases against the railroad and the District, but the motion was denied, and no error is assigned to this action of the court.

The cases against the District were tried to a jury; a verdict in favor of the District was returned and judgments entered accordingly.

The declarations allege that the District was negligent in failing to maintain Chestnut street in a reasonably safe condition for the use of the public. Specifically, the allegations of negligence are that the railroad tracks approaching the street crossing were so obscured from the view of pedestrians and operators of vehicles by dwellings and the elevation of the ground that a person approaching would have difficulty in seeing the tracks leading to the crossing; that a watchman was employed at the crossing in the daytime but not in the nighttime; that the signal lights maintained by the railroad, which would flash when a train was about to cross and while it was crossing the street, could not be readily seen in an automobile of the type being driven by Mrs. Johnson at the time of the accident; that the electric bells installed by the railroad were not of such sound volume as could be readily heard by the driver of a car with the windows of the automobile closed; and that a railroad crossing sign installed by the railroad and located on the right of way of the railroad was obscured by a brilliant light which the District had placed immediately above it. The only other ground of negligence alleged was that a certain "caution" sign, which had formerly been installed by the District upon the right-hand side of Chestnut street approaching the crossing, had been knocked down some five months prior to the accident and had not been replaced.

The uncontradicted evidence showed, and counsel for the plaintiffs admitted, that before and at the moment of collision the red warning signal lights were flashing, the signal bell was ringing and the whistle and bell of the locomotive sounding. The witnesses Gallagher, Barnum, and Jackson saw the lights and heard the bell more than 400 feet from the crossing. The witness Barnum had stopped his car at the crossing to allow the train to pass. Jackson and Gallagher heard the whistle of the locomotive and saw the beams of the headlight of the locomotive on the tracks.

In view of this uncontradicted evidence, it is obvious that Mrs. Johnson, the driver of the automobile, was guilty of gross negligence in driving on the tracks. But the deceased and her daughter were not directing or controlling the movement of the automobile; and, there being no evidence of want of due care on their part for their own safety, their contributory negligence cannot be presumed, but on the contrary, in the circumstances, they are presumed to have done all that prudence and care required of them to avoid the accident. Nor can the negligence of the driver be imputed to them. Miller v. U. P. R. R. Co., 290 U. S. 227, 54 S. Ct. 172, 78 L. Ed. 285. We must therefore have recourse to the record to determine if any error was committed in the trial to the prejudice of plaintiffs.

The errors urged may be summarized as follows: The court erred in charging the jury that, in order to recover, the plaintiffs must show that the accident was due *solely* and *proximately* to the failure of the District to exercise ordinary and reasonable care to maintain the street at the crossing in a reasonably safe condition for the use of the traveling public; the court erred in refusing to receive in evidence certain memoranda and correspondence taken from the files of the District government tending to show notice or knowledge of the dangerous character of the street at the crossing.

In support of the first assignment, it is insisted that the evidence established that the accident occurred as the result of the concurring negligence of the railroad and the District, and that, in such circumstances, the District is liable to the same extent as though the accident were caused by its negligence alone. This is undoubtedly a correct statement of the law. "It is no defense for a wrongdoer that a third party shared the guilt of the same wrongful act, nor can he escape liability for the damages he has caused on the ground that the wrongful act of a third party contributed to the injury." Choctaw, O. & G. R. Co. v. Holloway (C. C. A.) 114 F. 458, 462. Cited and approved in Miller v. Union Pacific R. Co., supra, 290 U. S. 227, page 236, 54 S. Ct. 172, 78 L. Ed. 285. So that, without more, it may be now said to be the settled rule that, if injury be caused by the concurring negligence of the de-

fendant and a third person the defendant is liable to the same extent as though it had been caused by his negligence alone. Miller v. U. P. R. R. Co., supra, 290 U. S. 227, page 236, 54 S. Ct. 172, 78 L. Ed. 285.

Plaintiffs' requested instruction No. 1 was a correct statement of the degree of care imposed by law on the District in the maintenance of its public highways and its liability for damages for the nonperformance of this obligation. It concluded by telling the jury that, if they found that the District failed to discharge the duty, "and that such failure contributed to the accident causing the death of plaintiff's intestate, then your verdict should be for the plaintiff." The trial court followed the instruction correctly in stating the legal obligation of the District in the maintenance of its highways. The court likewise correctly told the jury that the negligence of the driver of the car was not imputable to the passengers, but again and again in the charge the court said that to recover, the plaintiffs must establish by a preponderance of the evidence that the negligence of the District "was the sole and proximate cause of the accident." As this limitation on recovery took away from the jury the right to find a verdict for the plaintiffs on the ground of the concurring negligence of the railroad, and likewise the right to find a verdict on the ground of the concurring negligence of the driver of the car, we should be obliged to reverse unless an examination of the evidence shows that the requested instruction was inapplicable because either there was no evidence of concurring negligence or, considered on the whole case, no proof of any negligence on the part of the District causing or contributing to the accident.

The lower court rejected the plaintiffs' theory of the concurring negligence of the railroad and the District because there was no such allegation in the declaration and, as the judge thought, also no evidence of that nature or to that effect introduced in the trial. In respect to both, we find ourselves in accord with the views of the trial court. An inspection of the declaration shows that the charges of negligence are confined to the alleged wrongful acts of the District, and so, likewise, a careful examination of the evidence shows a complete lack of proof of any act on the part of the railroad causing or contributing to the accident. The train which collided with the automobile was being operated in the usual and customary manner over the railroad company's right of way. The engine bell was ringing and the engine whistle sounding. The engineer and fireman were at their posts, and the speed was not excessive. The railroad crossing warnings were of standard character and were in effective operation at the time of the accident. The railroad was not required by ordinance or otherwise to have a watchman on duty or safety gates at the crossing, and even in the brief of counsel no evidence or fact is pointed out on which the jury or we could sustain the contention that the railroad was at fault.

The evidence in relation to the driver of the automobile, however, is wholly different. She, as the evidence indisputably shows, was guilty of negligence, and her negligence necessarily either caused or contributed to the accident. When, therefore, the court told the jury that to find against the District they must be satisfied it was solely responsible for the collision, the charge was to all intents and purposes the equivalent of a directed verdict for the District, since, as we have seen, it was conceded by both sides that the act of the driver of the automobile, if it did not cause the accident, at least contributed to its happening. And, while liability on the part of the District on that theory appears never to have been suggested to the trial court and was not pressed in the argument, we have felt obliged to notice it, in order to determine the question decisive of it and, indeed, of the case, viz., whether on the whole case there is any evidence of actionable negligence attributable to the District; for, if there is, then the judgment below was wrong.

That which is alleged is that the surrounding topographical conditions made the crossing inherently dangerous, and thus imposed upon the municipality the duty of proper warning to avoid accidents. The particular failure charged, as we have seen, is in neglecting to replace the "caution" sign, which had previously been erected on Chestnut street, and in placing above the railroad warning sign an electric light which tended by its greater power to obscure the red danger lights flashing approximately six feet below.

The evidence as to the caution sign was that it had been placed between the sidewalk and the curb to a height of about three and a half feet primarily as a warning to pedestrians. That it had been knocked down by an automobile backing

into it some five or six months before the accident, and never replaced is conceded; and, if the failure to put it back was negligence which caused or contributed to the event which occurred on the evening of October 26, 1929, a verdict for plaintiffs perhaps should have been returned. But there is nothing in the evidence which would have warranted the jury or which will warrant us in characterizing the failure to replace the sign as negligence. In the first place, it was primarily a daylight sign. It was not lighted at night, and was so close to the ground that it must have been unseen by an automobilist except if and when it came into the radius of the headlights of the car. It is obvious it was not intended, and equally that it was useless, as a warning for automobilists. But over and above all of that, the other signs and methods then in use to notify the driver of an automobile of the presence of the railroad crossing were sufficient for that purpose and were such as the evidence shows are standard and in general use where crossings are not protected by safety gates. This evidence came largely from the plaintiffs' witnesses and is not contradicted. There was a pole or tower approximately 15 feet high located on the right-hand side of the roadway and at or near the railroad right of way as one approached the crossing. It was painted alternately white and black to attract attention. At the top was the usual and familiar crossarms sign with the words "railroad crossing" painted in large letters. Above these crossarms was an electric globe light of the latest and most improved pattern capable of reflecting its light down on the street and roadway over a radius of 100 feet. The highway was straight for a long distance and only 20 feet wide; the railroad right of way 66 feet across. On the other side of the crossing was another light of the same character and power. Beneath the crossarms, and attached to each side of the pole on short arms, were two electric danger flashlights (red) with protecting hoods focused down the highway and visible for approximately 1,000 feet; and, in addition to these, there was at the crossing a bell 10 or 12 inches in diameter, worked by electricity, and of such volume as to be heard from two to five blocks. It was constructed to ring from the time the train was more than 4,000 feet away.

That these means of warning were reasonably sufficient the evidence offered on behalf of the plaintiffs clearly demonstrates, for the testimony of all but one of the witnesses, for either side, who were present on the night in question, is that they saw the danger flashlights and heard the bell, and counsel frankly admit these facts as true.

In such circumstances it cannot be doubted that all reasonable men will agree that the municipality had discharged the duty of maintaining Chestnut street in a reasonably safe condition. The District is not an insurer of the safety of travelers upon its streets. It is a sufficient discharge of its duty if it maintains its streets and roadways in a reasonably safe condition for travel in the ordinary modes. Unquestionably, safety gates are desirable at all grade crossings. The elimination of the grade crossing itself, in the present condition of travel by automobile, is now recognized by nation and state as of paramount importance in reducing the increasing toll of human lives in grade-crossing collisions. But, as we have said, there was no positive duty on the District in any of these respects. It is not required to adopt the newest or safest methods either in the construction and maintenance of its streets or in the character of appliances used for warning pedestrians approaching a railroad crossing. As to the latter, all that is required is that they shall be reasonably adequate for that purpose. And since, by the overwhelming weight of evidence, those we are concerned with here were such as could be readily seen and heard by day and night by all but the most heedless, it follows they were sufficient to meet the requirements of the rule.

The unfortunate deceased passenger and the more unfortunate survivor, though themselves without negligence, are nevertheless, through their representatives, without right to recover unless they can show negligence on the part of the District of Columbia, for without negligence there can be no recovery. And, as we think the evidence shows that the District discharged its legal obligations in relation to the maintenance of the street in question, there was no harmful error in the court's charge; and this is true, because in no view can a judgment for the plaintiffs be sustained. See the Act of Feb. 26, 1919 (28 USCA § 391), which admonishes us to give judgment without regard to technical errors which do not affect the substantial rights of the parties.

The remaining assignment had to do with the refusal of the court to allow the plaintiffs to show the dangerous character of the crossing by the records of the office of the Commissioners of the District. It is sufficient answer to this to say that the court admitted in evidence all the records in this respect which were either reasonable or proper. Police reports of a fatal accident at the crossing some years prior were allowed to be read to the jury. Letters from citizens in relation to the same fatal accident were admitted. The reports of the Commissioners themselves and their recommendation that the grade crossing be abolished were read to the jury. There was enough to show that the place was dangerous, as indeed all such places are dangerous, though in this connection the official records show large and constant use and only two fatalities in a long space of years. But the parts of the records which were not allowed to be read were no more than cumulative evidence of those that were, and in other respects were objectionable, and rightly rejected.

The judgments of the Supreme Court should be affirmed.

Affirmed.

GRONER and HITZ, Associate Justices, dissenting.