**L. W. FOSTER SPORTSWEAR CO., Inc.,**
Plaintiff-Appellant and Appellee,

v.

**GOLDBLATT BROS., INC.,** Defendant-
Appellee and Appellant.

Nos. 15120, 15121.

United States Court of Appeals
Seventh Circuit.

Feb. 2, 1966.

John F. McClure, Sherman D. Weiss, Chicago, Ill., for plaintiff-appellant, L. W. Foster Sportswear Co., Inc., Kahn, Adsit, Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., of counsel.

Joseph DuCoeur, Gordon H. S. Scott, Chicago, Ill., for defendant-appellee, Goldblatt Bros., Inc., Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., of counsel.

Before HASTINGS, Chief Judge, and KILEY and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

This is a diversity action for recovery, under Count I, of a "balance due" on goods Foster, a Philadelphia clothing manufacturer, sold and delivered to Goldblatt of Chicago; and, under Count II, for damages for Goldblatt's alleged breach of contracts. The jury returned a verdict for Foster on Count I for $76,246.-56; and a separate verdict for $20,830.-26 in its favor on Count II. Judgment was entered on these verdicts. The district court ultimately granted Goldblatt's motion for judgment notwithstanding the verdict on Count I, entering judgment for Foster for $14,840.78, the amount defendant admitted was due plaintiff, plus interest; and denied Goldblatt's motion for judgment notwithstanding the verdict or a new trial on Count II, and Foster's motion to amend the original judgments on both counts to include 5% statutory interest. Foster has appealed and Goldblatt has cross-appealed. We reverse and reinstate the original judgment on Count I, and affirm the judgment on Count II.

## COUNT I.

Foster's suit covers transactions during the period from January 1, 1958, to May 27, 1959. The award under Count I arose out of sales of clothes, in paying for which Goldblatt made deductions, from Foster's invoices, for advertising allowances, cost of hangers, merchandise returned, freight charges against Goldblatt, differences in amounts stated in Goldblatt purchase orders and Foster invoices, and for reductions (markdowns) by Goldblatt in retailing Foster's merchandise. Goldblatt tendered the sum of $14,840.78 to Foster during the trial as the limit of its liability under Count I.

The district court, on Foster's motion at the close of all evidence, struck from Goldblatt's answer the basis for its defense of accord and satisfaction, but permitted to stand the alleged defenses of "account stated" and "estoppel." Later, however, the court submitted the question of accord and satisfaction to the jury. Then, notwithstanding the jury verdict, the district court sustained all three of Goldblatt's affirmative defenses as to Foster's claims under Count I, and reduced the jury verdict to the sum tendered.[1]

1. Judgments on the verdicts were rendered on March 27, 1964. On April 17, 1964, the district court denied Goldblatt's motion for judgment notwithstanding the verdict on both counts and Foster's motion to amend the judgments to include statutory interest, but vacated the judgments and granted Goldblatt's motion for new trial. On its own motion, the court reconsidered the case and entered an order on September 25, 1964, denying Goldblatt's motion for a new trial and vacating that part of its previous order; the court reinstated the jury verdicts and entered judgment thereon, and denied all other motions. On September 30, 1964,

Foster filed a notice of appeal to this court from denial of its motion to amend the judgments to include statutory interest. Then Goldblatt moved the district court to reconsider, and when the district court indicated it had jurisdiction to hear this motion, Foster sought writs of mandamus and prohibition in this court, which issued, on October 14, 1964, a rule to show cause upon the district judge. Goldblatt moved this court to remand for ruling on its post-trial motion, which was granted on November 5, 1964. On December 30, 1964, the district court on remand entered the judgments subject of this appeal.

■ Goldblatt had the burden of proving the defense of accord and satisfaction. One of the essentials of that defense is an assent or meeting of the minds, 1 I.L.P. Accord and Satisfaction § 4 (1953), a contract express or implied, 1 Am.Jur.2d Accord and Satisfaction § 4 (1962). The judgment notwithstanding the verdict on Count I therefore presents a question of law whether there is any evidence tending to prove that Foster did not assent to any or some of the reductions of its invoiced amounts. On this question we must, under the familiar rule, take only the evidence most favorable to Foster and draw the inferences in the light most favorable to it.

The district court's Memorandum in Support of Order stated that defendant's affirmative defenses rest upon substantially uncontroverted facts: Foster's claims were in dispute; Goldblatt sent its checks in a mode intended to state and settle the account in full; and 151 checks were accepted, cashed and the proceeds retained during a period of almost eighteen months with only the last of the 152 checks mailed being refused.

During the period in suit Goldblatt would order goods from Foster on written purchase orders and contracts. Foster would deliver the goods against the orders and send an invoice covering each delivery. A copy of the invoice would then be deposited by Foster with Textile Banking Company of New York, and Textile advanced sums of money to Foster against the invoices. Goldblatt's checks in payment of invoices would be made out to Textile and Foster and be sent direct to Textile, which applied the checks in reduction of its loans to Foster.

Each of the 152 Goldblatt checks relevant to Count I had a "voucher portion" on which were listed the invoice or invoices covered thereby, with the amounts thereof, and various debits claimed by Goldblatt, identified by the date, number and amount of each attached debit memo.[2] The check was made out for the net balance after deduction of the total debits from the total invoiced amounts, as shown on the voucher. The debits on a particular voucher did "not necessarily" relate to the invoice or invoices for which the check was being drawn. And the fact that an invoice number was listed on a voucher did not indicate that a claim would not be made against that invoice at a later time on another voucher. Foster received written notice from Textile of the amount of each debit deducted by Goldblatt. None of the checks except the 152nd, the last one sent by Goldblatt, was returned uncashed by Textile and Foster.[3]

The testimony Goldblatt relied upon was that Foster agreed orally late in the fall of 1957 and again in early spring of 1958 and in 1959 with Goldblatt to the latter's markdown of prices of goods, and to its charging advertising and freight costs against Foster.

However, this testimony was contradicted by rebuttal testimony for Foster. And there was testimony by Goldblatt witnesses that debits of the kind charged against Foster under "usual practice" would be incorporated in the purchase order or by separate letter. But there was no provision in the purchase orders for the debits which Goldblatt deducted from the invoiced amounts, even though the alleged oral agreements usually preceded the sending of purchase orders.[4] And there was no separate letter.

■ We think the question of fact whether there were oral agreements authorizing the charging of the various debits was properly submitted to the jury. The jury could have decided, as it presumably did decide, that the evidence preponderated in favor of Foster. Thus there is no basis for sustaining the defense of accord and satisfaction on the theory of express agreement.

2. A copy of each debit memo had already been sent to Foster. The memo itself gave the reason for the debit, i.e., advertising, markdown, etc.

3. This check was evidently tendered as a settlement of all Foster claims.

4. In only two contracts were advertising chargebacks provided for.

It is true that neither Foster nor Textile returned any Goldblatt checks, corresponding to the net balance on the vouchers, save the 152nd and last check. But there is testimony that in January, February, March, September, November and December of 1958, and in January, February and March of 1959, Foster by telephone and by letter complained of the debits taken and was assured on each occasion that if the debit memoranda were returned to Goldblatt, they would be "taken care of." Taking this testimony as true, we think the jury could have decided that there was no implied agreement by Foster that Goldblatt could deduct the claimed debits from the invoiced amounts charged for the Foster merchandise. We conclude that the question whether Foster implicitly assented to Goldblatt's taking the debits was for the jury. There is accordingly no room here for application of the rule stated in In re Estate of Cunningham, 311 Ill. 311, 315, 142 N.E. 740, 742 (1924), that where there is a bona fide dispute, the fact that the creditor protests avails him nothing if he accepts the check upon the condition stated, i. e., that it is offered in full settlement of the amount claimed by the debtor to be due.

■■ We need not discuss the affirmative defenses of account stated and estoppel. The evidence favorable to Foster and inferences drawn most strongly in its favor, recited above, show that the questions relating to these defenses were also for the jury.

We hold that the court erred in entering judgment notwithstanding the verdict for Goldblatt and that the judgment on the verdict on Count I must be reinstated.

## COUNT II.

Goldblatt contends the court erred in denying its motion for judgment notwithstanding the verdict or for a new trial on Count II because, it argues, either the orders, subject of that count, were never given at all, or were withdrawn before they could have been accepted, or Foster's losses could have been minimized had it ceased fulfilling the orders upon being notified the orders were revoked. On this contention, as in our consideration of the court's ruling on Count I, we must consider only the evidence favorable to Foster with inferences drawn in the light most favorable to it which tends to support the jury's verdict.

The evidence for Foster is as follows: Goldblatt sent it three orders for men's summer suits, two calling for delivery on February 25, 1959, and the third for delivery of 50% of the order at the end of March and the remainder on April 27, 1959. Part of these orders were delivered and accepted, but on five occasions from the end of February through early April Goldblatt notified Foster not to ship the balance of the suits under the three purchase orders because of the cold weather in Chicago, Goldblatt's "overbought" inventory, and its lack of money. It was not until the last of March and again early in April that Goldblatt told Foster to sell the goods in the market. While these talks were going on, Foster "had these goods manufactured, we had them hanging there, we had to ship * * them," and "all the labor was * * * paid for and all the materials. * * * We were cramped for room and for money."

■ We need not recite the favorable testimony for Foster with respect to orders for cardigan jackets and "suburban coats." We think there is evidence tending to prove that the orders were given and were not withdrawn before they could have been accepted.

We hold that the jury could have found, if they believed Foster's testimony, that the orders were fulfilled, or in the process of fulfillment, before the attempted repudiations or revocations by Goldblatt took place. We see no merit therefore in Goldblatt's contention that the district court erred in denying its motion for judgment notwithstanding the verdict or for a new trial on Count II. Accordingly, section 64(4) of chapter 121½, Illinois

Revised Statutes (1959 ed.),[5] has no application, and Goldblatt's arguments which assume that the orders were withdrawn or repudiated before Foster's manufacture of the goods have no validity here.

The district court instructed the jury that the measure of damages under Count II "is the difference between the agreed price and the market value of the goods in Chicago, Illinois, at the time the goods would have been delivered [if a delivery date was specified] * * * or at the time when defendant refused * * to issue delivery instructions [if no delivery date was specified]. * * *" This was correct.[6] The record supports the instruction. We think Foster's theory of damages was proven and the instruction not erroneous.

## INTEREST.

The court allowed interest at the rate of five (5) per cent per annum on the judgment notwithstanding the verdict of $14,840.78, the amount Goldblatt admitted was due, under Count I, computed from May 27, 1959, the date of the last transaction under that count, to March 26, 1964, the date Goldblatt tendered that amount in court. Foster's motions for interest upon the original judgments on Count I and Count II from June 27, 1959, thirty days after the last transaction between the parties, to the date of the judgments, were denied. Foster claims error in the ruling.

We hold that Foster's contention is just and that the court's contrary ruling was erroneous. The Illinois statute provides in pertinent part: "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on

any bond, bill, promissory note, or other instrument of writing * * *."[7] We think the purchase orders and contracts under Count I constituted "other instrument[s] of writing" under this provision. See Hufford v. National Retailer-Owned Grocers, Inc., 16 Ill.App.2d 1, 11, 147 N.E.2d 437, 442 (1st Dist. 1957). The jury determined that plaintiff was entitled to recover a balance due upon these instruments. The court should have allowed interest from the date a balance was due, even though plaintiff's claimed right and the amount due required legal ascertainment. In re Morrison, 261 F. 355, 356 (7th Cir. 1919) (Illinois cases cited). Foster claims the date was June 27, 1959. We agree.

The verdict on Count II was upon alleged breach of the contracts involved. These contracts were "other instrument[s] of writing," and interest should have been allowed on the damages awarded by the jury based on the difference between the contract price and the market price. National Dairymen Ass'n v. Dean Milk Co., 183 F.2d 349, 355 (7th Cir.), cert. denied, 340 U.S. 876, 71 S.Ct. 122, 95 L.Ed. 637 (1950); Murray v. Doud & Co., 167 Ill. 368, 375, 47 N.E. 717, 719 (1897); Barker-Lubin Co. v. Wanous, 26 Ill.App.2d 151, 167 N.E.2d 797 (4th Dist. 1960) (Abstract of Decision). Here, as under Count I, all claims would have been due by June 27, 1959, so the allowance of interest should be from this date.

Goldblatt's reliance on this court's decision in Harry Alter Co. v. Chrysler Corp., 285 F.2d 903, 907 (7th Cir. 1961), is misplaced, for interest was sought there upon an open account under a different provision in the statute which allows interest

---

5. This section concerned the seller's duty to mitigate damages upon repudiation by the buyer and was part of the Illinois Sales Act, which was repealed and replaced by the Illinois Commercial Code in 1961, see now ILL.REV.STAT. ch. 26, § 2 (1965 ed.).

6. This familiar measure of damages for non-acceptance is recognized both under the old sales law, see ILL.REV.STAT. ch.

121½, § 64(3) (1959 ed.), and the new Commercial Code, ILL.REV.STAT. ch. 26, § 2—708 (1965 ed.).

7. ILL.REV.STAT. ch. 74, § 2 (1965 ed.), which continues in part: " * * * on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; * * *."

only "from the day of liquidating accounts."

The judgment notwithstanding the verdict on Count I is reversed. The judgment on Count II is affirmed. The cause is remanded with directions to reinstate the judgment entered on the verdict on Count I, and to amend the judgments on both counts to include an allowance of statutory interest at five (5) per cent per annum from June 27, 1959 to the date of the entry of the judgments.

Affirmed in part; reversed in part, and remanded.