Arlene B. BECKER et al., Appellants,

v.

COLONIAL PARKING, INC., Appellee.

No. 21100.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 19, 1967.

Decided Jan. 27, 1969.

34. *Id*. at 333 n. 2.

35. *Id*. at 334.

36. *Id*.

37. *Id*.

Mr. Lucien Hilmer, Washington, D. C., with whom Mr. J. H. Krug, Washington, D. C., was on the brief, for appellants.

Mr. John F. Mahoney, Jr., Washington, D.C., with whom Messrs. Charles E. Pledger, Jr., and James C. Eastman, Washington, D. C., were on the brief, for appellee.

Before EDGERTON, Senior Circuit Judge, and WRIGHT and ROBINSON, Circuit Judges.

## SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

On the morning of July 12, 1963, Arlene B. Becker and her father-in-law, Julius Becker, who sought damages in the District Court for personal injuries, drove to a commercial parking lot operated by appellee.[1] They turned their station wagon over to the attendant there, Willie Thomas Whitehead, at the sentry booth beside the entrance, and proceeded to a store in the neighborhood.[2] The lot accommodated side-by-side parking of a row of vehicles along each of its lateral boundaries, and four lanes of in-line parking, perpendicular to the two side-by-side rows, in the area between them. A small portion of that area near the sentry booth was left open for vehicular movements essential to parking and unparking.

Minutes after the Beckers departed, Robert W. Enholm, a regular user of the lot,[3] arrived and left his car for Whitehead to park, stating that he would return very shortly. Whitehead parked the Becker car in an in-line lane at the very rear of the lot, which abutted on an alley. He then parked the Enholm car in the open area, perpendicular to and "near touching" one of the two rows of cars parked side-by-side, and a car length or less behind a taxi parked in an in-line lane.[4]

Somewhat later, the Beckers returned for their station wagon, and turned in their stamped ticket [5] at the sentry booth. Whitehead pointed out the location of the station wagon and told them that they could drive it out through the rear alley. Whitehead then walked toward the rear of the lot to assist another customer in unparking.

To reach their station wagon, the Beckers had to walk through the small open area in which the Enholm car was parked, and this they proceeded to do. Before reaching their vehicle they heard two motors start up in front of them and, for protection, they stepped behind the taxi parked in front of Enholm's car. It was then that the unfortunate accident occurred which gave rise to this litigation.

Enholm, in the meanwhile, had returned for his car. His long-time practice was to unpark the car himself if it were not blocked in by other vehicles. On the occasion in suit, he felt that he could remove his car from the place where Whitehead had parked it, and this he endeavored to do. In the

---

1. The third appellant is Mrs. Becker's husband who sought damages for loss of consortium. Those sued were appellee, Robert W. Enholm and Enholm's employer, the latter having space on the lot under a monthly rental agreement. The claims against Enholm and his employer were settled, and they were dismissed from the litigation. The settlement agreement stipulated, harmoniously with Martello v. Hawley, 112 U.S.App.D.C. 129, 132, 300 F.2d 721, 724 (1962), that any judgment rendered against appellee would be credited by one-half of its amount.

2. When the Beckers left their station wagon for parking, Whitehead gave them a ticket. The ticket was stamped by the store to which the Beckers went, and the stamped ticket was returned to and accepted by Whitehead when they returned for the station wagon. From this we gather that the fee for parking the station wagon was to be paid by the store. In any event, the trial judge told the jury that the Beckers were business invitees of the parking lot and, without claim to the contrary, the case was argued to us on that theory.

3. See note 1, *supra*.

4. Mrs. Becker estimated the distance between Enholm's car and the taxi to be about one car length, while Whitehead described it as about half a car length.

5. See note 2, *supra*.

process, he negligently allowed the vehicle to smash into the Beckers as they stood behind the parked taxi.

At the close of appellants' case-in-chief,[6] appellee moved for a directed verdict on the ground that the evidence did not make out a prima facie showing of negligence. This motion was denied,[7] and the jury returned a verdict in favor of each appellant. Appellee, however, moved thereafter for judgment notwithstanding the verdict, and this motion the trial judge granted. Articulating his reasons for doing so, the judge said:

> When Whitehead parked the Enholm car close to other vehicles in the lot, he might have anticipated that permitting Enholm to move it would result in danger from scraping to the closely adjoining vehicles. But plaintiffs' contentions to the contrary notwithstanding, *there was clearly no relationship whatsoever between where Whitehead parked the Enholm car and the fact that Enholm lost control of the car, injuring the Beckers.* The car could have been parked in the middle of the lot with empty spaces on all four sides and this tragic accident might still have occurred.
>
> When Whitehead parked the Enholm car only minutes before the accident, it had handled and operated normally. No evidence was introduced at the trial to show that Whitehead had reason to think Enholm was not a competent operator of the vehicle; indeed, the evidence presented demonstrated that on frequent prior occasions, Whitehead had permitted Enholm to park and unpark his car without mishap.

Clearly, there was one proximate cause of the accident in which the Beckers were injured: Robert Enholm lost control of his car and smashed into them. No reasonable jury could find that Whitehead had reason to foresee that Enholm would lose control of his car; no evidence was introduced to support that theory, and there was ample evidence to the contrary. *A fortiori,* Whitehead had no reason to foresee that the Beckers might be injured and, consequently, he had no legal duty to warn them that Enholm's car was about to be moved.

Since Whitehead was not negligent and no act or omission by him even remotely caused the accident from which the plaintiffs' injuries resulted, the verdict of the jury in favor of the plaintiffs must be vacated, and a verdict entered in favor of the defendant.[8]

In reviewing, on this appeal, the trial judge's action, we must give the evidence the interpretations most favorable to appellants.[9] So viewed, and in the light of pertinent legal principles, it leads us to a different result. We conclude that the evidence was sufficient to authorize the jury to find that Whitehead was guilty of negligence, in violation of a duty owed appellants, which contributed to the injuries they sustained. We accordingly reverse, and remand the case to the District Court with instruction to reinstate the verdict and enter judgment in conformity therewith.

### I

 A parking lot operator, like other possessors of business premises,[10]

---

6. Appellants called Whitehead to the stand during the presentation of their case-in-chief. Appellee offered no evidence.

7. Prior to hearing the motion, the trial judge expressed some doubt as to appellee's liability, but decided to submit the case to the jury. We have commended this practice where a difference of opinion is possible. Seganish v. District of Columbia Safeway Stores, 132 U.S.App.D.C. 117, 406 F.2d 653 (Sept. 24. 1968) at 8, and cases cited.

8. Emphasis in original.

9. Hunt v. Rhodes, 369 F.2d 623, 624 (1st Cir. 1966) ; L. W. Foster Sportswear Co. v. Goldblatt Bros., Inc., 356 F.2d 906, 908 (7th Cir. 1966) ; Dovberg v. Dow Chemical Co., 353 F.2d 963, 968 (3d Cir. en banc 1965), cert. denied 384 U.S. 907, 86 S.Ct. 1344, 16 L.Ed.2d 360 (1966).

10. "A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the

though not an insurer of the safety of his customers,[11] does owe them a duty of reasonable care.[12] Liability for injuries may be predicated upon a breach of this duty in regard either to his own activities or those of a third person on the premises.[13] For the operator's obligation is to exercise prudent care, not only in his own pursuits but also to identify and safeguard against whatever hazardous acts of others are likely to occur thereon.[14] Appellants, as business customers of appellee's parking lot,[15] were indisputably entitled to a full measure of that protection.[16]

The trial judge's decision to award judgment to appellee notwithstanding the jury's verdict is bottomed essentially upon the view that while Whitehead "might have anticipated that ·permitting Enholm to move [his car] would result in danger from scraping to the closely ·adjoining vehicles * * * there was clearly no relationship whatsoever between where Whitehead parked the Enholm car and the fact that Enholm lost control of the car, injuring the Beckers." This conclusion, his ensuing discussion makes clear, was the product of ·a mixed application of doctrine traditionally associated with the conceptually separate issues of negligence and proximate cause. The statement that there was no evidence of "reason to think Enholm was not a competent operator of the vehicle" refers obviously to the contest over Whitehead's negligence. The observation that the "one proximate cause of the accident" was Enholm's loss of control of his car is even more self-speaking. The comments concerning reason to foresee Enholm's loss of control and the Beckers' resulting injuries could have been more broadly directed toward both negligence and causation. Thus we are brought to consider whether the evidence as a whole sufficed to carry the case to the jury on these issues.

## II

▮▮▮ Our law sets standards designed to protect society's members from unreasonable exposure to potentially injurious hazards. The duty to exercise reasonable care is one of those standards,[17] and negligence is conduct that falls short of the reasonable care standard.[18] "Whether a defendant has acted

---

land for such a purpose, for physical harm, caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it." Restatement (Second) of Torts § 344 (1965).

11. Fielding v. S. Z. Poli Realty Co., 274 Mass. 20, 174 N.E. 178, 179 (1931). See also Nolan v. United States, 186 F.2d 578, 579 (4th Cir. 1951). And see Medes v. Hornbach, 56 App.D.C. 13, 14, 6 F.2d 711, 712 (1925).

12. Fielding v. S. Z. Poli Realty Co., supra note 11, 174 N.E.2d at 179. See also Nolan v. United States, supra, note 11, 186 F.2d at 579; Phillips v. Seltzer, 133 F.Supp. 721, 724 (S.D.N.Y.1955), aff'd 240 F.2d 857 (2d Cir. 1957). And see Medes v. Hornbach, supra note 11, 56 App.D.C. at 14, 6 F.2d at 712.

13. Restatement (Second) of Torts § 344 (1965), quoted supra note 10. For an application of the same principle to grocery stores, see Seganish v. District of Columbia Safeway Stores, supra note 7.

14. Restatement (Second) of Torts § 344 (1965), quoted supra note 10.

15. See note 2, supra.

16. See Restatement (Second) of Torts §§ 332, 344 (1965).

17. Washington Hosp. Center v. Butler, 127 U.S.App.D.C. 379, 383, 384 F.2d 331, 335 (1967); McGettigan v. National Bank of Washington, 115 U.S.App.D.C. 384, 386, 320 F.2d 703, 705, cert. denied 375 U.S. 943, 84 S.Ct. 348, 11 L.Ed.2d 273 (1963), quoting Restatement of Torts § 282 (1934); Kendall v. Gore Properties, 98 U.S.App.D.C. 378, 384, 236 F.2d 673, 679 (1956).

18. "In a legal sense negligence means nothing more or less than substandard care— want of that degree of care the law commands in the particular circumstances." Richardson v. Gregory, 108 U.S.App.D.C. 263, 266, 281 F.2d 626, 629 (1960).

as a reasonable man in the circumstances is said to depend upon whether his conduct—act or omissions—created an unreasonable risk of harm toward a plaintiff." [19] By the same token, "[t]he duty owed by a defendant to those who may be injured by his actions is measured by the risks which those actions create." [20] Since the instructions which the trial judge gave to the jury comported fully with these governing legal principles, the only question is whether the evidence could support a verdict for appellants.

Pedestrian activity on appellee's parking lot was obviously fraught with a considerable degree of danger at the time the Beckers were injured. "It was quite a busy morning," said Whitehead, the only attendant on the lot.[21] Mrs. Becker adds that the lot "was nine-tenths full. There were cars parked along different directions. There was just a little space between the sentry box and the middle of the lot"—just "a little area that was free of cars." It was through this area that Whitehead directed the Beckers to walk at a time when vehicles, including Enholm's, would have to maneuver therein to accommodate the exigencies of unparking.

Whitehead had parked the Enholm car in such a position that considerable driving ability was required to safely extricate it. About a car length behind was the sentry booth, a car length or less ahead was the taxi,[22] and "near touching" on the left side were cars parked side-by-side. There was no clear lane for exit ahead or behind, and for lack of room it could not be turned around. To get out of the tight space, Whitehead said, "you had to be careful and skillful about how you cut it." Even then the vehicle could be driven from the lot only by backing it through the small open area, across the sidewalk, and into the stream of traffic in the street in front.[23]

Whitehead always reserved for himself the decision as to whether it was safe for Enholm to attempt to unpark his car. It is no wonder that, as Whitehead testified, he never intended to permit Enholm to try to remove the car alone on the occasion in question. Whitehead said that he planned either to take the car out himself or to personally direct Enholm in the necessary movements. This was "[b]ecause his front end was close to the cars on his left and I figured he might hit them."

That Enholm might return at any moment and undertake to unpark his car was well within the range of normal expectation. When Enholm left his car, he told Whitehead that he would return in a few minutes. Thus Whitehead knew, when thereafter the Beckers came for their station wagon, that Enholm might be back at any time. He also knew that Enholm customarily unparked the car himself unless it was blocked in by other vehicles. Yet Enholm was not cautioned, when he left his car, not to try to unpark it. Nor after Whitehead had parked it was it immobilized by removal of the ignition key. Nor were the

19. McGettigan v. National Bank of Washington, *supra* note 17, 115 U.S.App.D.C. at 386, 320 F.2d at 705.

20. As we have stated, "[t]he duty owed by a defendant to those who may be injured by his actions is measured by the risks which those actions create. 'The care required is always reasonable care. This standard never varies, but the care which it is reasonable to require of the actor varies with the danger involved in his act and is proportionate thereto. The greater the danger, the greater the care which must be exercised.'" Richardson v. Gregory, *supra* note 18, 108 U.S.App.D.C. at 266, 281 F.2d at 629, quoting Restatement of Torts § 298, com.

*a* (1934). See also Foy v. Friedman, 108 U.S.App.D.C. 176, 177–178, 280 F.2d 724, 725–726 (1960); Kendall v. Gore Properties, *supra* note 17, 98 U.S.App. D.C. at 383, 236 F.2d at 678; Hecht Co. v. Jacobsen, 86 U.S.App.D.C. 81, 83, 180 F.2d 13, 15 (1950); McKay v. Parkwood Owners, Inc., 78 U.S.App.D.C. 260, 139 F.2d 385 (1943).

21. The evidence reveals that the lot had a parking capacity of about 60 cars.

22. See note 4, *supra.*

23. There was only one entrance into the parking lot. Exiting vehicles could use either the entrance or, if they could reach it, the rear alley.

Beckers cautioned against possible movement of the Enholm car, or any other car, when Whitehead directed them to walk to their station wagon.

It is conceded by all that Enholm was negligent in the manner in which he endeavored to remove his car from the parking lot.[24] It is also true that the record is devoid of evidence that would have disclosed to Whitehead Enholm's negligent disposition, if any he had. But "the actor is required to know that there is a certain amount of negligence in the world, and that some human beings will fail on occasion to behave as a reasonable man would behave."[25] So "[w]here the *possibility* of such negligence involves an unreasonable risk of harm, either to the person who is to be negligent or to another, the actor, as a reasonable man, is required to take it into account and to govern his conduct accordingly."[26]

■ We think the issue as to Whitehead's negligence was for the jury.[27] As heretofore we have delineated the criterion by which the assessment is to be made,

> The ultimate question is whether defendant can fairly be said to be responsible for the injuries complained of. If reasonable men could not differ in answering that question the court, it is said, should not allow the jury to speculate about it; but if reasonable men could differ and draw different inferences from the facts or find one set of facts when two are offered and from those found could conclude that defendant's conduct was negligent, then the jury ought to be permitted to answer the ultimate question.[28]

Here the jury, applying contemporary community standards,[29] might plausibly have concluded that Whitehead was negligent in exposing the Beckers to an unreasonable risk of injury by directing them to walk to the rear of the parking lot through the narrow clear area close by the Enholm car, without either warning them that Enholm might be moving the car or taking steps to safeguard against an attempt by Enholm to do so.[30] Indeed, the evidence might have suggested to the jury the question whether, in view of the fact that at least some customers were required or permitted to fetch their cars, the provision of but a single attendant to manage the lot during the busy periods amounted to reasonable care under the circumstances.[31]

### III

■ Negligence, without more, is not tantamount to liability. "A simple breach of duty having no causal connection with the injury," we have admonished, "cannot produce legal re-

---

24. Enholm claimed that the accident was caused by a mechanical failure of his car. It is apparent that the jury rejected this claim.

25. Restatement (Second) of Torts § 302 A, com. *c* (1964) (emphasis added). Torts § 33 at 174–175 (1964).

26. Restatement (Second) of Torts § 302 A, com. c (1964) (emphasis added).

27. *E. g.*, McGettigan v. National Bank of Washington, *supra* note 17, 115 U.S.App. D.C. at 386, 320 F.2d at 705.

28. *Id.*

29. Compare Washington Hosp. Center v. Butler, *supra* note 17, 127 U.S.App.D.C. at 384–388, 384 F.2d at 336–340.

30. In similar vein, the trial court instructed the jury in substance that if Whitehead had reason to believe that in the absence of precaution or warning Enholm was likely to attempt to unpark the car alone, and that Whitehead failed to take any precautionary measures, a finding of negligence would be warranted.

31. Compare Solon Serv. v. Cook, 96 U.S. App.D.C. 25, 26–27, 223 F.2d 317, 318–319 (1955). It was necessary to move the cars about on the lot to enable parking and unparking. The lot had a capacity of about 60 cars. Sometimes, like on the day of the Beckers' injury, the lot was busy. Enholm testified that Whitehead was usually busy, and so Enholm usually unparked his car. Whitehead had to leave the Beckers, when they came for their station wagon, to attend to another customer.

sponsibility." [32] It is a settled maxim of tort law that "both negligence *and* causation must be proved before the plaintiff can have a verdict." [33] We reach now the contention that the evidence did not establish a causal relationship between Whitehead's negligence and the harm that befell the Beckers.

On this aspect of the case, the trial judge charged the jury in orthodox fashion, emphasizing that appellee could not be held liable unless negligence on Whitehead's part was the proximate or a contributing cause of appellants' injuries. He pointed out that dual responsibility might be predicated upon the negligent conduct of two or more persons combining to efficiently produce an injury. And he instructed the jury that

> In determining whether the defendant's negligence was a contributing cause, it is immaterial whether the defendant could have foreseen the precise manner in which the accident occurred. It is sufficient if an ordinary careful and prudent person ought under all the circumstances to have foreseen that an injury to pedestrians such as the plaintiffs might probably result from the negligent acts or omission.

Three-quarters of a century ago, this court declared that "[o]ne cannot escape the consequences of his own negli-

gence merely because another person, with whom he has no connection or over whom he has no control, may have contributed to the injury by his wrongful or negligent act." [34] Down through the ensuing years we have adhered to that principle by the application of the rule imposing liability upon those whose negligent acts concur in producing injury. [35] That Enholm shared Whitehead's guilt for the harm visited upon the Beckers did not remove Whitehead from the shadow of responsibility.

And in telling the jury that it was unnecessary that the exact mode of injury have been augured, the instructions harmonized completely with the law prevailing in this jurisdiction. "A defendant need not have foreseen the precise injury, nor 'should [he] have had notice of the particular method' in which a harm would occur, if the possibility of harm was clear to the ordinarily prudent eye." [36] We do not intimate that foreseeability is a *sine qua non* of causation, or that a defendant cannot sometimes be held accountable for unforeseeable consequences of negligent conduct. [37] All we need to say here is that if Whitehead should reasonably have been sensitive to a risk of some personal injury to the Beckers, appellee became liable although the specific sequence of events leading up to it remained obscure.

**32.** Richardson v. Gregory, *supra* note 18, 108 U.S.App.D.C. at 266, 281 F.2d at 629.

**33.** *Id.* at 266, 281 F.2d at 629. See also Arthur v. Standard Eng'r Co., 89 U.S. App.D.C. 399, 401, 193 F.2d 903, 905 (1951); Danzansky v. Zimbolist, 70 App. D.C. 234, 236, 105 F.2d 457, 459 (1939). And see Industrial Sav. Bank v. People's Funeral Serv. Corp., 54 App.D.C. 259, 260, 296 F. 1006, 1007 (1924).

**34.** Metropolitan R. R. v. Jones, 1 App.D.C. 200, 205 (1893).

**35.** McGettigan v. National Bank of Washington, *supra* note 17, 115 U.S.App.D.C. at 390, 320 F.2d at 709, Danzansky v. Zimbolist, *supra* note 33, 70 App.D.C. at 235–236, 105 F.2d at 458–459; Campbell v. District of Columbia, 64 App.D.C. 375, 376–377, 78 F.2d 725, 726–727 (1935);

Washington, A. & M. V. Ry. v. Lukens, 32 App.D.C. 442, 453–454 (1909).

**36.** Kendall v. Gore Properties, *supra* note 17, 98 U.S.App.D.C. at 387, 236 F.2d at 682, quoting Munsey v. Webb, 231 U.S. 150, 156, 34 S.Ct. 44, 58 L.Ed. 162 (1913). See also Boland v. Love, 95 U.S. App.D.C. 337, 345, 222 F.2d 27, 35 (1955); United States v. Morow, 87 U.S. App.D.C. 84, 86, 182 F.2d 986, 988 (1950). And see McGettigan v. National Bank of Washington, *supra* note 17, 115 U.S.App.D.C. at 390 n. 7, 320 F.2d at 709 n. 7; Hitaffer v. Argonne Co., 87 U.S.App.D.C. 57, 61, 183 F.2d 811, 815, 23 A.L.R.2d 1366, cert. denied 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950); Washington, A. & M. V. Ry. v. Lukens, *supra* note 35, 32 App.D.C. at 453–454.

**37.** See W. Prosser, Torts § 50 (3d ed. 1964).

Under proper instructions, then, the jury returned its verdict, necessarily incorporating a finding that Whitehead was negligent. Implicit in the verdict also was the finding, paralleling the instructions, that "an ordinary careful and prudent person ought under all the circumstances to have foreseen that an injury to pedestrians such as the plaintiffs might probably result from the negligent acts or omission." And it is clear that the evidence supporting the finding on negligence [38] served equally to underpin the finding on causal relationship.

The trial judge seems to have been persuaded toward his ultimate conclusion by the feeling that Whitehead could only have expected that Enholm's unparking efforts might result in scraping the vehicles beside which it was parked. If, indeed, the evidence had confined the jury to the conclusion that Whitehead's negligence foreseeably threatened property damage only, we would be confronted with the question whether in such circumstances liability could attach for the personal injuries that actually resulted.[39] But that is not an issue on this appeal for, in our view of the evidence, the scope of reasonable anticipation was not so limited. True it was that damage from contact with the closely parked vehicles was a rather plain risk incident to an attempt to move the Enholm car, but we think the evidence authorized a much broader conclusion. When Whitehead dispatched the Beckers through the open area near the Enholm car, he knew that the car was unlocked, that Enholm was soon to return, and that Enholm frequently unparked the car himself. The jury might well have felt that Whitehead should have envisioned not merely the possible scraping of two vehicles when one was sought to be moved from a tight position very near the other, but also possible injury to those in the immediate vicinity of the movement resulting either from the exigencies of the maneuver or from "that occasional negligence which is one of the ordinary incidents of human life."[40] We have sustained liability for personal injury to which intervening negligent[41]—even intervening criminal[42]—acts made a contribution under conditions affording considerably less in the way of expectable consequences. Given the circumstances here, we cannot say that the jury could not logically find that the range of prudent foresight was broad enough to encompass what happened here.

Reversed and remanded with directions.

J. SKELLY WRIGHT, Circuit Judge (concurring):

I concur in Judge Robinson's excellent opinion. I reject the notion that in the modern law of torts foreseeability is a *sine qua non* of causation. *See* W. PROSSER, TORTS § 50 (3d ed. 1964). Nor would I limit the jury here to a consideration of the parking lot attendant's action in determining negligence or causation. Given the generally dangerous design and operation of this parking lot, the jury could easily have determined that the negligence of appellee itself caused appellants' injuries. *See* Solon Service, Inc. v. Cook, 96 U.S.App.D.C. 25, 26–27, 223 F.2d 317, 318–319 (1955).

38. See the text *supra* at notes 21–24.

39. See the discussion in W. Prosser, Torts § 50 at 298–299 (3d ed. 1964).

40. *Id.* § 51 at 313, quoting Restatement of Torts § 302, com. *l.* (1934).

41. McGettigan v. National Bank of Washinton, *supra* note 17, 115 U.S.App.D.C. at 390, 320 F.2d at 709; Solon Serv. v. Cook, *supra* note 31, 96 U.S.App.D.C. at 26–27, 223 F.2d at 318–319.

42. Gaither v. Myers, 131 U.S.App.D.C. 216, 404 F.2d 216 (Oct. 10, 1968) at

6–12; Colonial Parkng, Inc. v. Morley, 129 U.S.App.D.C. 151, 391 F.2d 989, 990–991 (1968); Kendall v. Gore Properties, *supra* note 17, 98 U.S.App.D.C. at 386–387, 236 F.2d at 681–682; Boland v. Love, *supra* note 36, 95 U.S.App.D.C. at 342–344, 222 F.2d at 32–34; Schaff v. R. W. Claxton, Inc., 79 U.S.App.D.C. 207, 144 F.2d 532 (1944); Ross v. Hartman, 78 U.S.App.D.C. 217, 139 F.2d 14, 158 A.L.R. 1370 (1943), cert. denied 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080 (1944).