**SPARTAN DISMANTLING CORP., Plaintiff,**

v.

**BARGES H.R. 54 AND H.R. 93 etc. and Hudson River Towing Line, Inc., Defendants.**

No. 79 CIV 1120.

United States District Court, E.D. New York.

March 30, 1983.

Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City, for plaintiff; John Ciraldo, New York City, of counsel.

George T. Delaney, Bedford, N.Y., for defendant and third-party plaintiff.

Hill, Betts & Nash, New York City, for third-party defendant; Terence Gargan and Michael X. Savasuk, New York City, of counsel.

## ORDER

McLAUGHLIN, District Judge.

Plaintiff, Spartan Dismantling Corp., ("Spartan"), brought this action to recover for damage to its barge as a result of alleged collisions with two other vessels owned by defendant, Hudson River Towing Line, Inc., ("Hudson River"). In the alternative, it seeks recovery against defendant Transit Mix Concrete Corp. ("Transit Mix"), contending that the latter's negligence allowed Hudson River's vessels to collide with plaintiff's ship.

This Court conducted a bench trial on January 28, 1983. For the reasons developed below, I conclude that plaintiff has failed to carry its burden of proof. Accordingly, this action is dismissed, and judgment will enter for the defendants.

## I. FACTS

### A. *The Parties*

Spartan, a New York corporation, was the registered owner of Barge No. 357 (SPARTAN 357) in March and April of 1979 when the events giving rise to this litigation occurred. At that time Spartan operated pier facilities on the Gowanus Canal in Brooklyn, New York. Mr. Charles Christie is and was the President of Spartan at all relevant times.

Hudson River, a New York corporation, was the registered owner of two separate Barges, H.R. 54 and H.R. 93, in March and April of 1979. Transit Mix was originally a third-party defendant, but, upon plaintiff's motion, was made a primary defendant. Transit Mix, also a New York corporation, owns and operates a cement plant and pier facilities on the Gowanus Canal.

### B. *The Vessels*

Plaintiff's vessel, the SPARTAN 357, is a motorless wooden barge, 125 feet long and 30 feet wide. It was built sometime before 1950, and purchased by Mr. Christie in 1974. Captain Henry C. Halboth, Transit Mix's

expert witness, testified that barges of such construction should be "dry docked" at least every two years to re-caulk, reseal, and paint the hull. Christie admitted that the barge has never been dry docked since he purchased it, but stated that caulking has been done from inside the hull. Halboth's uncontroverted testimony, however, was that caulking from inside the hull was ineffective to prevent deterioration of the vessel. In any event, it is undisputed that the SPARTAN 357 was not watertight: there were five or six inches of water in the ship's bilge two days before it sank.

Hudson River owns the other two vessels involved in this litigation. The H.R. 54 and H.R. 93 are motorless, break-bulk steel cargo scows, 120 feet in length, and 38 feet wide.

### C. The Collisions and the Sinking

#### 1. The H.R. 54

On the morning of March 29, 1979, a tug, called the TWIN, was delivering the H.R. 54, loaded with gravel, to Ferrar Construction, located on the Gowanus Canal almost directly across from Spartan's facility.

Christie and other Spartan employees observed the TWIN pivot the H.R. 54 against the SPARTAN 357 in order to maneuver the H.R. 54 through the canal. In the process, the H.R. 54 struck and squeezed the SPARTAN'S hull. The contact caused SPARTAN to sustain an indentation in the corner of the hull, and the ship began to leak.

Christie and his employees undertook repairs which, according to Christie's testimony at trial, were successful. Thus, the plaintiff does not claim that the contact with the H.R. 54 somehow "weakened" the SPARTAN to the extent that a subsequent collision would cause the SPARTAN to sink when it might not otherwise have. Rather, damages are sought for the damage caused directly to the SPARTAN by the contact just detailed.

#### 2. The H.R. 93

During the last week of March 1979, Transit Mix ordered a shipment of crushed rocks from Hudson River to be delivered by March 31, 1980. On that morning, the tugboat TWIN delivered the H.R. 93 to Transit Mix's facility, and the TWIN's crew tied the H.R. 93 to the berth. The vessel had been unloaded by that afternoon; so Transit Mix notified Hudson River that the H.R. 93 was ready to be picked up. This notification was in accordance with Transit Mix's operating procedure.

The H.R. 93 was not picked up, however, and, on April 1, it was still at the Ninth Street dock. Transit Mix continued to instruct Hudson River to pick up its barge, but without result. The stated reason for Hudson River's failure to pick up its barge was a tug boat strike that paralyzed navigation on the canal.

On April 11, 1979, a lack of work closed Transit Mix's Brooklyn plant indefinitely. Transit Mix contacted Hudson River to inform it of the closing, and again advised Hudson River to pick up its barge. Hudson River did not do so.

For reasons that have not been determined, the H.R. 93 broke from its moorings sometime on Sunday, April 15 and began to drift. Thus, in the early morning hours of that date, the vessel was adrift in the canal. On Monday, April 16, Christie arrived at work between 6:30 and 7:00 A.M., and discovered the SPARTAN 357 partially sunk with the H.R. 93 wedged against it. The central question of what caused the sinking remains unanswered.

Plaintiff believes that the H.R. 93, while adrift, struck and sank the SPARTAN 357. Defendants offer several alternative explanations for the sinking. Transit Mix disputes plaintiff's conclusion that the damage to the SPARTAN 357 sustained as a result of the earlier striking by the H.R. 54 had been completely repaired. Both defendants note that there were no eyewitnesses to the collision, despite the fact that plaintiff had a security guard on duty at the time. Although the guard had orders to notify Christie in any emergency, there was no such notification. Defendants emphasize the testimony of Transit Mix's expert, Cap-

tain Halboth, who testified that because of the weather and current conditions at the material times, and because of the physical characteristics of the vessels involved, the H.R. 93 could not have been drifting fast enough to strike the 357 with sufficient force to sink it.[1]

I must therefore decide two questions: (1) whether plaintiff has established that the H.R. 93 caused the SPARTAN to sink; and (2) whether plaintiff may recover for the earlier damage caused by the H.R. 54.

## II. LAW

■ Plaintiff correctly notes that when a drifting vessel collides with a stationary ship, it is presumed that the drifting vessel is at fault. *The Oregon,* 158 U.S. 186, 197, 15 S.Ct. 804, 809, 39 L.Ed. 943 (1894); *Baltimore Steam Packet Co. v. Flushing, College Point & New York Steam Ferry Co. ("The Louisiana"),* 70 U.S. 164, 173, 18 L.Ed. 85 (1866); *Skidmore v. Grueninger,* 506 F.2d 716, 721 (5th Cir.1975). What plaintiff overlooks, however, is that the presumption does not arise until a collision is first proven.

As in any negligence case, the plaintiff has the burden of establishing the causal connection between the defendant's conduct and the injury sustained. The Second Circuit has recently considered this problem in the very context of a ship collision:

.... Essential to any negligence case is a showing by the plaintiff that the negligence of the defendant in fact caused plaintiff's injury. *E.g., Becker v. Colonial Parking, Inc.,* 133 U.S.App.D.C. 213, 220, 409 F.2d 1130, 1137 (1969). The trial court found that here Atmanchuck had failed to establish any cause at all for the sinking of the Victor. We would disturb such a factual finding by the district judge at a bench trial only upon a showing that it was clearly erroneous. *See McCallister v. United States,* 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); *SS Amazonia Companhia De Navegacao Maritima*

*Netumar v. New Jersey Export Marine Carpenters, Inc.,* 564 F.2d 5, 8 (2d Cir. 1977). *See also Mamiye Bros. v. Barber Steamship Lines Inc.,* 360 F.2d 774, 777 (2d Cir.), *cert. denied,* 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 70 (1966). But on the record before us we cannot say that the trial court clearly erred in making that determination. (Footnotes omitted).

*United States v. Mowbray's Floating Equipment Exchange, Inc.,* 601 F.2d 645, 646–47 (2d Cir.1979).

■ Although the matter is not free from doubt, I am compelled to conclude that Spartan simply has not established that the H.R. 93 caused the sinking. Objectively viewed, the sole evidence in plaintiff's favor is that the H.R. 93 was adrift, and found wedged against the SPARTAN 357 on April 16. There were, again, no witnesses to the alleged collision. In addition, the testimony offered by Transit Mix's expert was neither refuted nor shaken by plaintiff. That testimony tended to establish that the SPARTAN was not properly maintained and that, given the prevailing weather conditions, the H.R. 93 could not have sunk a properly maintained vessel. In short, the evidence is at least equally consistent with the conclusion that the SPARTAN sank from simple disrepair, and was under water when the H.R. 93 drifted over it. Plaintiff has not carried its burden of proof.

■ One question remains: Must Hudson River compensate plaintiff for the earlier damage caused by the H.R. 54 when it pivoted against the SPARTAN 357? Plaintiff's claim as to the H.R. 54 is puzzling. In its complaint, plaintiff charges that the H.R. 54 was "negligently, recklessly and carelessly left in the area where Barge No. 357 was moored. Barge H.R. 54 then drifted and struck the ... 357." Complaint, para. 7. At trial, of course, Christie stated that the collision was not accidental at all; rather, the H.R. 54 had used the SPARTAN as a pivot in executing a turn.

---

1. Captain Halboth testified that the H.R. 93 could not have caused the sinking if the SPARTAN had been in good repair. Plaintiff maintains, of course, that its vessel was in all respects staunch and seaworthy at the time of the alleged collision.

All parties are apparently in substantial agreement that Christie's testimony accurately recounts the incident. The legal issue of liability for this collision, however, has not been focused on by either party, apparently because the subsequent sinking of the SPARTAN is perceived as the central issue in the case. Christie did testify to his belief that it was improper to employ other vessels as pivots. I do not find it necessary to explore this issue further, however, because I hold that plaintiff's complete failure to adduce any evidence of damage resulting from the contact would preclude recovery in any case.

At no point in this protracted litigation has plaintiff come forth with any evidence of damages resulting from the initial contact between the H.R. 54 and the SPARTAN. The complaint seeks damages for the second collision only, Complaint at para. 12, although the H.R. 54 incident is mentioned. Further, plaintiff never responded to either of two requests for an itemization of damages. Interrogatories Addressed to Plaintiff by Hudson River, para. 32; Interrogatories Addressed to Plaintiff by Transit Mix, para. 35.

Finally, Christie's testimony at trial fell far short of establishing any ascertainable damages: he merely stated that the contact had caused the ship to leak, necessitating the addition of a pump and repair work by several crew members. No cost estimates have been provided for the repair work done. Under these circumstances, the Court cannot award damages. Plaintiff must prove the amount of damages with at least reasonable certainty. *Compania Pelineon De Navegacion, S.A. v. Texas Petroleum Co.*, 540 F.2d 53, 56 (2d Cir.1976); *W.L. Hailey & Co. v. Niagara County*, 388 F.2d 746, 753 (2d Cir.1967).

Accordingly, plaintiff cannot recover for either incident, and judgment will enter for defendants.

SO ORDERED.